**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| MAHALO ENERGY (USA) INC., | ) | Case Number 09-80795 |
| Tax ID No. XX-XXX5447, | ) | (Chapter 11) |
| Debtor. | ) | |

**DEBTOR'S APPLICATION FOR ORDER APPROVING THE
EMPLOYMENT OF RAYMOND JAMES AND ASSOCIATES, INC. TO
PROVIDE A GOING CONCERN ENTERPRISE VALUATION FOR
THE DEBTOR IN POSSESSION, COMBINED WITH BRIEF IN SUPPORT**

The Debtor in Possession, Mahalo Energy (USA) Inc. (the "Debtor"), applies for an order approving its employment of Raymond James & Associates, Inc. ("Raymond James"), to provide a going concern enterprise valuation of the Debtor and testimony in connection with the hearings on the Debtor's Disclosure Statement and/or Plan. The Debtor states as follows in support of this application:

1.      An order for relief under Chapter 11 of Title 11, United States Code (the "Bankruptcy Code"), was entered in this case on May 21, 2009.

2.      The Debtor is a debtor in possession.

3.      The Debtor filed a Disclosure Statement, and it is set for hearing on December 10, 2009.

4.      The Debtor believes a going concern enterprise valuation would be helpful in connection with its reorganization.

5.      The Debtor does not have the expertise internally or from its currently retained professionals to perform such a valuation.

6.      The Debtor has conferred with, and now desires to employ the investment banking firm of, Raymond James to provide a going concern enterprise valuation in connection

1

with the Debtor's reorganization efforts.

7.     The Debtor has selected Raymond James because of its extensive experience and knowledge in the field. The Debtor believes that Raymond James is well qualified to prepare the going concern enterprise valuation and that such valuation would be helpful in connection with the Debtor's reorganization efforts.  As such, the employment of the Raymond James would be in the best interests of the estate.

8     Raymond James has indicated its willingness to provide the Debtor with the requested going concern enterprise valuation upon the terms, compensation, indemnity and reimbursements set forth in the letter agreement (the "Agreement") attached hereto as Exhibit "A."  As a general description, and without limitation, the Agreement provides for a $200,000 fee due and payable upon entry of the order of employment, expense reimbursement (including Raymond James' attorneys' fees), testimony fee for time in excess of two days, and indemnification.

9.     Based on the affidavit of Rajinder Singh (the "Affidavit"), which is attached as Exhibit "B" and incorporated herein for all purposes, and except as disclosed in the Affidavit, Raymond James does not hold or represent an interest adverse to the estate.  Except as disclosed in the Affidavit, neither Raymond James, nor any member or associate thereof, insofar as he has been able to ascertain, has any connection with the Debtor, its creditors, or any other party in interest, or their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee.

10.     No agreement or understanding exists between Raymond James and any other entity for the sharing of compensation received or to be received for services rendered in or in connection with this case, except between Raymond James and its shareholder or regular

associates.

11.     Section 327(a) of the Bankruptcy Code provides:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

12.     Raymond James is an investment banker and is a professional within the meaning of §327 of the Bankruptcy Code. *In re Bicoastal Corp.*, 149 B.R. 216 (Bankr. M.D Fla. 1993).

13.     Section 328(a) of the Bankruptcy Code grants the court discretion to approve the proposed compensation arrangement between the Debtor and Raymond James and provides in pertinent part:

> The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis….

14.     Factors to consider when determining whether to approve employment are:

> (1) whether terms of an engagement agreement reflect normal business terms in the marketplace; (2) the relationship between the Debtor and the professionals, i.e., whether the parties involved are sophisticated business entities with equal bargaining power who engaged in an arms-length negotiation; (3) whether the retention, as proposed, is in the best interests of the estate; (4) whether there is creditor opposition to the retention and retainer provisions; and (5) whether, given the size, circumstances and posture of the case, the amount of the retainer is itself reasonable, including whether the retainer provides the appropriate level of "risk minimization," especially in light of the existence of any other "risk-minimizing" devices, such as an administrative order and/or a carve-out. *In re Insilco Techs., Inc.,* 291 B.R. 628, 633 (Bankr.D.Del.2003)).

15.     Because the Debtor is seeking to retain Raymond James under section 328(a) of the Bankruptcy Code, Raymond James' compensation shall not be subject to review under section 330 of the Bankruptcy Code.

16.     The terms proposed are normal in the market place, the Agreement was

negotiated extensively on an arms-length basis, it is in the best interest of the estate, and, given the scope, extent of services to be performed and time constraints, the amount is fair and reasonable. The principal creditor, Ableco, does not oppose Raymond James's employment on the terms set forth in the Agreement.

17.     Lastly, the Debtor has agreed to indemnify Raymond James and each of its directors, officers, agents, employees and controlling persons in accordance with indemnification provisions set forth pursuant to the Agreement. The indemnifications reflected in the Agreement are customary and reasonable terms of consideration for financial advisors such as Raymond James for proceedings both out of court and in chapter 11. The Debtor respectfully submits that the inclusion of an indemnification provision is acceptable and in the best interests of the Debtor, the estate and its creditors. "Indemnification provision contained in Chapter 11 debtors' retention agreement with financial advisor, which exempted advisor from liability for its own ordinary negligence, was reasonable and, thus, permissible under the Bankruptcy Code." *United Artists Theatre Co. v. Walton*, 315 F.3d 217 (3rd Cir. 2003). See, also, *In re DEC Intern., Inc.*, 282 B.R. 423 (W.D.Wis. 2002).

WHEREFORE, the Debtor-in-possession, Mahalo Energy (USA) Inc., requests entry of an Order, substantially in the form attached hereto as Exhibit C, approving its employment of Raymond James, effective as of the application date, on the terms and conditions contained in the Agreement.

Dated: October 30, 2009

Respectfully,

/s/ G. David Bryant
Stephen W. Elliott, OBA #2685
G. David Bryant, OBA #01264
KLINE KLINE ELLIOTT & BRYANT, PC
720 N.E. 63rd Street
Oklahoma City, OK 73105
(405) 848-4448
(405) 842-4539 (fax)
selliott@klinefirm.org
dbryant@klinefirm.org

ATTORNEYS FOR THE DEBTOR IN
POSSESSION, MAHALO ENERGY
(USA), INC.

**EXHIBIT A**

# RAYMOND JAMES®

**CONFIDENTIAL**

October 29, 2009

Mahalo Energy (USA) Inc.
5110 South Yale, Suite 101
Tulsa, OK  74135

Attention:  David Burton, Chief Executive Officer

Dear Mr. Burton:

It is our understanding that Mahalo Energy (USA), Inc. (the "Company") desires to retain the services of Raymond James & Associates, Inc. ("Raymond James"), to provide certain independent valuation advisory services to the Company as described below.  This letter agreement (the "Agreement") is intended to serve as our agreement to provide the services outlined herein, to the extent Raymond James is able, consistent with its policies and practices.

## 1.  Valuation Advisory Services

Raymond James will perform an independent analysis of the pro-forma enterprise value of the Company as a going concern (the "Enterprise Value") giving effect to a proposed restructuring of the outstanding indebtedness of the Company pursuant to a plan of reorganization (the "Plan") to be filed in the proceeding commenced by the Company under Chapter 11 of the Bankruptcy Code (the "Bankruptcy Case") pending before the United States Bankruptcy Court for the Eastern District of Oklahoma, Okmulgee (the "Bankruptcy Court").  Upon the request of the Company, Raymond James will prepare a written summary reflecting its analysis of the Enterprise Value (the "Report"), which shall utilize the Company's existing reserve reports and internal reserve analysis, it being understood that Raymond James shall not perform or commission a reserve report as part of its analysis.   Raymond James's analysis shall be limited to the Enterprise Value, and neither the analysis nor the Report shall represent or contain an opinion as to any of the terms and conditions of the Plan or the fairness of the consideration to be received under the terms of the Plan.

## 2.  Examination Materials

In connection with the services describe above, Raymond James may, among other examinations, review:

  (a)  Certain historical financial information of the Company for recent years and interim periods, including the Company's audited and unaudited financial statements;

  (b)  The Company's publicly-filed reports and schedules;

**Raymond James & Associates, Inc.**
Member New York Stock Exchange/SIPC
277 Park Avenue, Fourth Floor, New York, NY 10172
212-885-1801 • 212-885-1808 Fax
www.RaymondJames.com

Case 09-80795    Doc 481    Filed 11/02/09    Entered 11/02/09 11:20:50    Desc Main
Document        Page 7 of 29

(c)    Certain internal financial analyses, reserve analyses, forecasts and operating data for the Company as prepared by the management of, or advisors to, the Company;

(d)    The business plan and prospects for the Company, as provided by the management of, or advisors to, the Company;

(e)    Certain publicly available information regarding companies or assets deemed generally comparable to the Company or the Company's assets, including valuations for such companies or assets, and;

(f)    Such other analyses and information as Raymond James may deem relevant for the purposes hereof.

## 3.  **Bankruptcy Retention**

The Company shall file an application with the Bankruptcy Court to retain Raymond James and to cause such application to be considered on the most expedited basis**.**  Such application shall seek authorization from the Bankruptcy Court to retain Raymond James pursuant to (and subject to the standard of review of) Section 328(a) of the Bankruptcy Code, in accordance with the terms hereof and Addendum A hereto and not subject to any other standard or review under Section 330 of the Bankruptcy Code.  The Company shall supply Raymond James with a draft of such application and any proposed order authorizing Raymond James' retention sufficiently in advance of their filing to enable Raymond James and its counsel to review and comment thereon. Services under this Agreement shall be subject to the entry of a final order of the Bankruptcy Court no longer subject to appeal, rehearing, reconsideration or petition (the "Retention Order") approving the retention of Raymond James and this Agreement under Section 328(a) of the Bankruptcy Code, and Raymond James shall not be required to perform any services in the Bankruptcy Case pursuant to this Agreement until the entry of the Retention Order.  In any event the Retention Order must be reasonably acceptable to Raymond James in all respects, and at a minimum shall approve the terms of this Agreement, including, without limitation, our agreement that: (i) none of the fees shall constitute a "bonus" under applicable law; (ii) Raymond James shall not be required to maintain time records; (iii) Raymond James shall be entitled to be paid in accordance with the terms of this Agreement, without further application to the Court; and (iv) all of Raymond James' fees and expenses shall be paid, regardless of the existence of any unpaid administrative claims in the Bankruptcy  Case.  If the Retention Order is not obtained (or is later terminated or set aside for any reason), either party may terminate this Agreement and the Company shall reimburse Raymond James for all professional fees and out of pocket expenses reasonably incurred prior to such date of termination, unless prohibited from doing so by applicable law and/or the Bankruptcy Court.

## 4.  **Fees**

(a)    <u>Reimbursement</u>.  The Company agrees to reimburse Raymond James, within thirty (30) days of receipt of an invoice thereof, for reasonable out-of-pocket expenses (including

legal fees) incurred by Raymond James in connection with this engagement or Agreement.

(b) <u>Report Fee</u>. Raymond James shall be paid a cash fee in the amount of $200,000, due and payable upon entry of the Retention Order (the "Report Fee").

(c) <u>Testimony Fee</u>. In the event that Raymond James, or any of its employees, is requested to provide testimony, whether at depositions, hearings or trial ("Testimony"), Raymond James will provide up to two days of Testimony, including preparation for and traveling to such Testimony. Any additional time expended by Raymond James in traveling to, preparing for, and providing such Testimony will be charged separately from the Report Fee at Raymond James's then current market hourly rates or market hourly rates charged by comparable firms for the relevant employees, not to exceed $750 per hour per professional.

## 5. <u>Term</u>

The initial term of this Agreement shall be for a period of 6 months from the date of this Agreement (The "Initial Term"), provided that either party may terminate this Agreement, except for the Surviving Provisions (as hereinafter defined) (the "Early Termination") by giving the other party at least thirty (30) days prior written notice of such Early Termination. Unless terminated by an Early Termination, after the expiration of the Initial Term, the term of this Agreement shall automatically renew on a month to month basis thereafter; provided, however, after the expiration of the Initial Term, except for the Surviving Provisions (as hereinafter defined), this Agreement may be terminated by either party upon thirty (30) days written notice to the other party. Notwithstanding any termination or expiration of this Agreement, Sections 4, 6 and 7 and Addendum A shall survive any termination or expiration of this Agreement along with any other provisions which expressly or by implication survive termination or expiration (collectively the "Surviving Provisions").

## 6. <u>Indemnification</u>

In consideration of Raymond James signing this Agreement and agreeing to perform services pursuant hereto, the Company agrees to indemnify and hold harmless Raymond James and each of its directors, officers, agents, employees and controlling persons (within the meaning of the Securities Act of 1933, as amended) to the extent and as provided in Addendum A attached hereto and incorporated herein by reference. The provisions of this Section 6 and Addendum A shall survive any expiration or termination of this Agreement and shall be binding upon any successors or assigns of the Company.

**7.**  **General Terms**

(a)  The Company agrees that Raymond James shall have the right, subsequent to the approval of the Plan, to place advertisements at its own cost in financial and other newspapers and journals describing its services hereunder.

(b)  This Agreement shall be governed by and construed in accordance with the laws of the State of Florida.  This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and permitted assigns.

(c)  The Company is a sophisticated business enterprise with competent internal financial advisors and legal counsel, and the Company has retained Raymond James for the limited purposes set forth in this Agreement.  The parties acknowledge and agree (i) that Raymond James has been retained solely for the purposes set forth herein and (ii) that the Company's engagement of Raymond James is as independent contractor and that their respective rights and obligations as set forth herein are contractual in nature.  Accordingly, the Company disclaims any intention to impose fiduciary or agency obligations on Raymond James by virtue of the engagement contemplated by this Agreement, and Raymond James shall not be deemed to have any fiduciary or agency duties or obligations to any other business entities or the Company, or their respective officers, directors, shareholders, affiliates or creditors, as a result of this Agreement or the services to be provided pursuant hereto.

(d)  This Agreement may be executed in one or more counterparts, each of which shall be an original but all of which shall together constitute one instrument.  This Agreement may also be executed by signatures on facsimiles hereof.

(e)  All claims arising out of the interpretation, application or enforcement of this Agreement, including, without limitation, any breach hereof, shall be settled by final and binding arbitration in St. Petersburg, Florida in accordance with the commercial rules then prevailing of the American Arbitration Association by a panel of three (3) arbitrators appointed by the American Arbitration Association.  The decision of the arbitrators shall be binding on Raymond James and the Company and may be entered and enforced in any court of competent jurisdiction by either party.  The arbitration shall be pursued and brought to conclusion as rapidly as is possible.  EACH OF RAYMOND JAMES AND THE COMPANY WAIVES ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) RELATED TO OR ARISING OUT OF THE ENGAGEMENT OF RAYMOND JAMES PURSUANT TO, OR THE PERFORMANCE BY RAYMOND JAMES OF, THE SERVICES CONTEMPLATED BY THIS AGREEMENT.

(f)  This Agreement and Addendum A constitute the entire agreement and understanding between Raymond James and the Company regarding the subject matter hereof and

**RAYMOND JAMES®**

supersede any and all prior, contrary agreements and understandings, whether oral or written, relating to the subject matter hereof.  This Agreement cannot be modified or changed nor can any of its provisions be waived, except by a writing signed by all parties.

(g)     In conjunction with the engagement outlined herein, the Company agrees to provide the necessary assistance and information required at all steps and to have management reasonably available as may be required by Raymond James.  In connection with Raymond James' services, the Company will furnish to Raymond James such information and data relating to the Company as Raymond James may reasonably request.  The Company recognizes and confirms that Raymond James, in the performance of its services hereunder:  (i) may rely upon such information received from the Company or its advisors, without independent verification by Raymond James; and (ii) does not assume responsibility for the accuracy or completeness of such information received from the Company or its advisors whether or not Raymond James makes an independent verification thereof.

(h)     In connection with this Agreement, the term "Confidential Information" means (i) confidential business or technical information or data of Company that is competitively and commercially valuable to Company and not generally known, or available by legal means, to the competitors of Company or (ii) materially nonpublic information about the Company, which, in either case, is somehow clearly marked or identified in writing as being Confidential Information.  Raymond James agrees that during the term of this Agreement, unless the Company has consented, or unless required by law, a court or agency of the government, Raymond James will not reveal or disclose any such Confidential Information to any third party, except to utilize such Confidential Information in a manner consistent with customary industry practices in connection with the provision of services under this Agreement.  Following the termination of this Agreement and this engagement, all such non-public Confidential Information in Raymond James' possession will be promptly returned to the Company at the Company's written request.

Neither the previous paragraph nor any restriction, non-disclosure or use limitation or other obligation contained in this Agreement shall apply to any information, data or item of any kind which is: (i) in the public domain, through no action of Raymond James; (ii) already known by Raymond James; (iii) disclosed to Raymond James by any person or entity not known by Raymond James to be under an obligation of confidentiality to Company; or (iv) independently developed or derived by Raymond James.

(i)      Except as provided in Section 1 above, the Company may not publish, refer to, describe or characterize Raymond James' engagement hereunder, or the advice provided to the Company by Raymond James, without the prior written approval of Raymond James in each instance.

**RAYMOND JAMES**®

(j)    The Company shall supply Raymond James a draft of any disclosure statement, plan of
reorganization and/or other court filings (the "Court Filings") that reference Raymond
James's services pursuant to this Agreement, the Enterprise Value or the Report in
advance of their filing to enable Raymond James and its counsel to review and
comment thereon.  In any event any such reference in the Court Filings must be
reasonably acceptable to Raymond James in all respects.   The Company further agrees
that it may not provide a copy of the Report to any third party without the approval of
Raymond James, which shall not be unreasonably withheld.

If this Agreement conforms to your understanding of the terms of our engagement, please sign
and return to us the enclosed duplicate hereof.

Very truly yours,

**RAYMOND JAMES & ASSOCIATES, INC.**

Name:  Rajinder Singh
Title:  Managing Director

**AGREED AND ACCEPTED:**

**MAHALO ENERGY (USA) INC.**

Name:  David Burton
Title:  Chief Executive Officer

Attachment

**RAYMOND JAMES**

# ADDENDUM A

Pursuant to the foregoing letter dated October 29, 2009 (the "Agreement"), Mahalo Energy (USA), Inc. (the "Company") agrees to indemnify and hold harmless Raymond James & Associates, Inc. and Raymond James Financial, Inc. (collectively, "Raymond James"), together with their respective officers, directors, shareholders, employees and agents, and each person, if any, who controls Raymond James and any of its affiliates within the meaning of the Securities Act of 1933 or the Securities Exchange Act of 1934 (all of the foregoing are referred to collectively as "Indemnified Parties" and individually as an "Indemnified Party"), from any and all losses, suits, actions, judgments, penalties, fines, costs, damages, liabilities or claims of any kind or nature, whether joint or several, (including, without limitation, any legal or any other expenses as they are incurred by an Indemnified Party in connection with the preparation for or defense of any action, claim or proceeding, whether or not resulting in any liability) (all of the foregoing being collectively defined as the "Indemnified Claims") to which such Indemnified Party may become subject or liable or which may be incurred by or assessed against any Indemnified Party under any statute, common law, contract or otherwise, relating to or arising out of any of:  (a) any actions or omissions of the Company or anyone acting on the Company's behalf, including its employees, officers, advisors, directors and agents; (b) the Agreement or the services to be performed pursuant to the Agreement; (c) any securities, tax, corporate, or other filings of the Company; or (d) any transactions referred to in the Agreement or any transactions arising out of the transactions contemplated by the Agreement; provided, however, that the Company shall not be liable to an Indemnified Party in any such case solely to the extent that any such Indemnified Claim is found, in a final, unappealable judgment by a court of competent jurisdiction, to have  resulted solely and exclusively and as a direct and proximate cause from said Indemnified Party's willful misconduct or gross negligence in the performance of their duties on behalf of Raymond James.  Promptly after receipt by an Indemnified Party of notice of the occurrence of an Indemnified Claim, or any claim or the commencement of any action or proceeding in respect of which indemnity may be sought against the Company, such Indemnified Party will notify the Company in writing of the commencement thereof or of such Indemnified Claim, and the Company shall immediately assume the full defense thereof (including the employment of counsel satisfactory to the Indemnified Party and the payment of the fees and expenses of such counsel).  Notwithstanding the preceding sentence, the Indemnified Party will be entitled to employ its own counsel in such circumstance if the Indemnified Party is advised in a written opinion of counsel that a conflict of interest exists which makes representation by counsel chosen by the Company not advisable.  In such event, the reasonable fees and disbursements of such separate counsel will be paid by the Company.

If for any reason (other than as specifically provided herein) the foregoing indemnity for an Indemnified Claim is unavailable to an Indemnified Party or insufficient to fully hold any Indemnified Party harmless, then the Company shall contribute to the amount paid or payable by such Indemnified Party as a result of such Indemnified Claim in such proportion as is appropriate to reflect the relative benefits received by and fault of the Company on the one hand, and the relative benefits received by and fault of the Indemnified Party on the other hand, as well as any relevant equitable considerations.  Notwithstanding any provisions herein to the contrary, the aggregate contribution of all of the Indemnified Parties for all Indemnified Claims shall not exceed the amount of fees actually received by Raymond James pursuant to the Agreement.  It is hereby further agreed that the relative fault of the Company on the one hand and an Indemnified Party on the other hand with respect to the transactions shall be determined by reference to, among other things, whether any untrue or alleged untrue statement of a material fact or incorrect opinion or conclusion or the omission or alleged omission to state a material fact related to information supplied by the Company on the one hand or by the Indemnified Party on the other hand, as well as the parties' relative intent, knowledge, access to information and opportunity to correct or prevent such statement, opinion, conclusion or omission.  No Indemnified Party shall have any liability to the Company or any other person in connection with the services rendered pursuant to this Agreement except for any liability for losses, claims, damages or liabilities finally judicially determined to have resulted solely and exclusively from actions taken or omitted to be taken as a direct result of such Indemnified Party's gross negligence or willful misconduct.  The indemnity, contribution and expense reimbursement agreements and obligations set forth herein shall be in addition to any other rights, remedies or indemnification which any Indemnified Party may have or be entitled to at common law or otherwise, and shall remain operative and in full force and effect regardless of any investigation made by or on behalf of any Indemnified Party.  In addition, the Company shall offer such indemnification and expense advance and reimbursement as it may be permitted to offer or extend pursuant to its Bylaws, Charter, Articles of Incorporation, or insurance.  The Company further agrees that the indemnification and expense advance and reimbursement obligations set forth herein, shall apply whether or not Raymond James or any other Indemnified Party is a formal party in any such Indemnified Claim.  The Company will not be permitted to settle any Indemnified Claim without the prior consent of Raymond James or any Indemnified Party involved therein if any admission of wrong doing, negligence or improper activity of any kind of Raymond James or such Indemnified Party is a part of such settlement.  The Company shall not, without the prior written consent of an Indemnified Party, effect any settlement of any pending or threatened action, suit or proceeding in respect of which an Indemnified Party is or could have been a party and indemnity could have been sought hereunder by such Indemnified Party, unless such settlement includes an unconditional release of such Indemnified Party from all liability on claims that are the subject matter of such action, suit or proceeding.

**EXHIBIT B**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

In re:                                        )
                                              )
MAHALO ENERGY (USA) INC.,                     )          Case Number 09-80795
Tax ID No. XX-XXX5447,                        )          (Chapter 11)
                                              )
        Debtor.                               )

## AFFIDAVIT

STATE OF NEW YORK              )
                              ) SS:
COUNTY OF NEW YORK             )

Rajinder Singh, being duly sworn, deposes and states:

1.      I am a duly authorized representative of Raymond James & Associates, Inc.,

("Raymond James"), 277 Park Avenue, Fourth Floor, New York, NY 10172 with full authority

to execute this affidavit on behalf of Raymond James.

2.      The facts set forth below are based on my personal knowledge, discussions with

other Raymond James employees, and Raymond James's client/matter records reviewed by me

or other Raymond James employees acting under my supervision and direction.   To the extent

any information disclosed herein requires amendment or modification upon Raymond James's

completion of further review or as additional information becomes available to it, a supplemental

declaration will be submitted to the Court reflecting such amended or modified information.

### Raymond James's Qualifications

3.      Raymond James is a worldwide diversified financial services firm involved in a

wide range of investment banking and other activities, including investment management,

corporate finance and securities issuing, trading, research and financial advisory planning, and

1

provides other financial advisory services to a range of corporate clients and institutional investors.

4.      Raymond James and its professionals have extensive experience with financially troubled companies in complex financial restructuring, both out of court and in chapter 11 reorganization cases. Raymond James has extensive experience in reorganization cases and has an excellent reputation for services it has rendered to various parties in interest in reorganization cases and complex representative cases including: Provident Royalties, LLC; Sun Country Airlines; HRP Myrtle Beach Holdings, LLC; Centrix Financial, LLC; Torch Offshore, LLC; LaGuardia Associates; Field Hotel Associates; Covanta Energy Corporation; Mega-C Power Corporation; United Acceptance Corporation; Conseco, Inc.; and Key Plastics, LLC. In addition, Raymond James has extensive experience in providing investment banking services to clients in the energy industry, including the exploration and production sector ("E&P"). Such experience includes providing general financial advisory services and being involved as advisors with respect to raising of capital, fairness opinions and valuations, and mergers, acquisitions, and divestitures for many energy and E&P companies. Accordingly, Raymond James and the professionals it employs are well qualified to represent the Debtor in the matters for which Raymond James is proposed to be employed.

## Raymond James's Disclosure Procedures

5.      Raymond James is a large and diversified organization whose activities include providing advisory services to many financial institutions and commercial corporations. In preparing this declaration, I used a set of procedures (the "Firm Disclosure Procedures") developed by Raymond James to ensure compliance with the requirements of the Bankruptcy

2

Code regarding the retention of professionals. Pursuant to the Firm Disclosure Procedures, I performed, or caused to be performed, the actions described below to identify Raymond James' connections to parties in interest in these proceedings.

6.      In preparing this declaration, I submitted or caused to be submitted for review under our conflicts check system the names of various parties in interest in the Bankruptcy Cases (collectively, the "Interested Parties"), as received from the Debtor. The identities of the Interested Parties are set forth on Schedule A attached hereto and incorporated herein by reference. The results of our conflict check were compiled and analyzed by Raymond James employees.

### Raymond James's Connections with Interested Parties

7.      As part of our business, Raymond James provides a wide variety of business advisory and investment banking services to a wide variety of persons and entities both nationally and internationally. To the best of my knowledge, based on the review procedures described above, Raymond James does not have any "connections" to the Interested Parties, except as hereinafter stated in this declaration. Out of abundance of caution, however, I am disclosing relationships that are not, to my understanding, materially adverse to the Debtor in matters upon which Raymond James is to be employed, disqualifying or problematic under either the Bankruptcy Code or applicable ethical standards of professional conduct.

8.      No agreement or understanding exists between Raymond James and any other entity for the sharing of compensation received or to be received for services rendered in or in connection with this case, except between Raymond James and its shareholder or regular associates.

3

9.     Neither I, nor any professional or employee employed by Raymond James, as far as I have been able to ascertain, has any connection that would be materially adverse to the Debtor, its creditors, or any other parties in interest, the Debtors' respective attorneys and accountants or any other Interested Party, except as set forth below or otherwise in this declaration:

(a)     Attached hereto as Schedule B and incorporated herein by reference is a list of Interested Parties (or their affiliates) to whom Raymond James currently or in the past has provided financial advice in matters <u>unrelated</u> to the Debtor's chapter 11 cases. Although Raymond James has advised and continues to advise certain entities and individuals listed on Schedule B hereto, Raymond James will not represent or provide advice to any such entity or individual in these cases.

(b)     Raymond James does not advise, and has not advised, any entity other than the Debtor in matters relating to these chapter 11 cases.

(c)     In matters <u>unrelated</u> to these cases, Raymond James may have worked with professionals that are included in the list of significant professionals in Schedule A.

(d)     Given the number of professionals and employees in various offices, employees at Raymond James may have professional, working or social relationships with firms or professionals at firms that may be adverse to the Debtor. Also, certain Raymond James employees may have spouses, parents, children, siblings, finances or financees who are employees of one or more of the Interested Parties. Raymond James has strict policies against disclosing confidential information to anyone outside of Raymond James, including spouses, parents, children, siblings, fiancés and fiancées.

(e)     It is possible that certain Raymond James employees hold interests in mutual funds or other investment vehicles that may own interests in the Debtor. Despite the efforts described above to identify and disclose Raymond James' connections with parties in interest in these cases, because Raymond James is a firm with

4

thousands of employees, and because the Debtor is a substantial enterprise with hundreds of creditor and other relationships, Raymond James is unable to state with certainty that every client relationship has been disclosed. In this regard, if Raymond James discovers additional information that requires disclosure, Raymond James will file a supplemental disclosure with the Court.

10. In the ordinary course of business, Raymond James provides retail brokerage services to individual customers. An investigation into whether or not Raymond James provides an Interested Party these same retail brokerage services would be very expensive, time consuming, can only be done reliably if Raymond James were to be provided with additional information about the Interested Parties, and would be overly burdensome on Raymond James under the circumstances. To the extent Raymond James provides an individual any retail brokerage services, Raymond James believes that the provision of such services does not prevent Raymond James from being disinterested under the Bankruptcy Code. Furthermore, Raymond James' provision of retail brokerage services – even to an Interested Party – has no connection to these Bankruptcy Cases.

11. Similarly, Heritage Asset Management and Eagle Asset Management, a wholly owned subsidiary of Raymond James, acts as an investment advisor to various funds that may from time to time, hold investments in securities of publicly traded companies that may be Interested Parties in these Bankruptcy Cases. Any such interest would be so small as to make the results of this case completely inconsequential to Heritage Asset Management's and Eagle Asset Management's clients. Raymond James believes that such holdings do not prevent Raymond James from being disinterested under the Bankruptcy Code, and have no connection to these Bankruptcy Cases.

5

12.     I am not related to and, to the best of my knowledge, no other employee of Raymond James is related to: (a) any United States Bankruptcy Judge for the Eastern District of Oklahoma or any of the District Judges for the Eastern District of Oklahoma who handle bankruptcy cases; or (b) the United States Trustee for the Eastern District of Oklahoma or any person employed by the Office of such United States Trustee.

13.     Based on the foregoing and except as provided herein, to the best of my knowledge, information and belief formed after reasonable inquiry, Raymond James does not represent or hold any interest adverse to the Debtor with respect to the matters as to which the Debtor seeks to employ Raymond James.

DATED: October 30, 2009.

_____
Rajinder Singh

Subscribed and sworn to before me October 30, 2009.

_____
Notary Public, Commission No.

My Commission Expires:

March 20, 2010

INDIA N. MOORE
NOTARY PUBLIC, STATE OF NEW YORK
QUALIFIED IN BRONX COUNTY
NO. 01MO6142371
MY COMMISSION EXPIRES MARCH 20, 2010

6

## SCHEDULE A TO SINGH AFFIDAVIT
### (Listing of Interested Parties Reviewed for Current Relationships)

### Secured Debt Holders

Abelco
Wells Fargo

### Vendors

Williams Production Mid-Con Co
Savanna Drilling LLC
Scientific Drilling
Weatherford US LP
Hunter Steel LLC
Penn Virginia MC Energy LLC
Metro Energy Group
Trailblazer Drilling Corp
Mustang Fuel Corporation
Bravo Construction Inc
Rose Resources Oil & Gas, Inc
Arrow Pump & Supply Inc
Blake Drilling Fluids Inc
B&B Gas Well Service LLC
ALVAREZ & MARSAL NORTH AMERICA
Blake Trucking,LLC
Arkoma Machine & Fishing Tools
Drumright Oilwell Service LLC
Precison Impact Recovery, LLC
Littlefield Oil Co
Hijet Bit LLC
Armstrong Tool LLC
Centerpoint Energy Field Serv
Multi Chem Group LLC
Team Packer Service
Bumpers Construction
River Valley Oilfield
Ballard Contracting & Oilfield
West Rock Energy Consultants
Horizon Well Logging,LLC
Baker Hughes Bus Support Ser
Pason Systems USA Corp

Sierra Engineering
Hoffman & Associates Inc
KLINE,KLINE,ELLIOTT
Wilson Industries LP
Smith Construction & Oilfield
ANDREW KURTH LLP
Yale Oil Association Inc
Roppel Construction
Oilman's Pump & Supply Inc
Big Mac Tank Trucks LLC
Great West Life
Kepco Operating Inc
Thru Tubing Solutions Inc
Halliburton Energy Serv Inc
CD's Pipe Rental Inc
Panther Energy Company LLC
Extreme Engineering
Oilwell Cementers Inc
M-I LLC
United Land Company LLC
Ace USA
Washita Valley Enterprises Inc
UNITED HEALTHCARE
Cimarron Services Inc
Double L Power Tongs
BICO Drilling Tools Inc
Canary Wellhead Equipment Inc
Williams Arkoma Gathering Co
TIW Corporation
Unit Liner Company
J-W Measurement Company
Source Energy Tool Services
Three Sheperds Welding
Allen Rathole Inc
Booth Environmental Sales &
Cougar Tool
Brown Oil Tools

1

C & L Dirtworks & Welding

Avatar Energy LLC

Team Snubbing Services LLC

Graco Fishing & Rental Tools

Arkoma Services

Precision Energy Services Inc

Compressco Field Services Inc

Clearway Resources

Ash Grove Resources LLC

B&B Well Completions OK,LLC

William H Huffman

Tryton Tool Services

Exterran Energy Solutions

PDC Logic

Kester Oilfield Services

Eastern Tank Service Inc

Express Energy Services

Superior Optimization, LTD

Mahaffey & Gore PC

Mid Central Hot Shot & Supply

CANAAN RESOURCES X LLC

Warrior Energy Services

K-Bar Company

Monroe Hotshot Service

Cudd Pressure Control

Butler & Cook,Inc

Ford Credit Commercial Leasing

West-Ark Oilfield Services LLC

Thetford Electric

Windsor Consulting

D&S Oil Tools, Inc

Wayne and Sandra J Davis

TSI Oilfield Services Inc

J-W Power Company

Bureau of Indian Affairs

Schlumberger Technology Corp

Integrity Energy Services,LLC

Cuesta Petroleum Inc

Energy Project Associates, Inc

The Pump & Equipment Co Inc

Brammer Engineering Inc

Quick Lay Pipe LLC

Kiamichi Electric Coop Inc

Donald R and Sherry A Barnes

Allford Ivester & Green

Beck Oilfield Supply Inc

SOGIANT PETROEQUIP USA CORP

Circle K Oilfield Services L

Nalco One Source,LLC

Mission Acres Country Store

McJunkin Red Man Corp

P.J.'S Country Store

Brooks Hotshot Service Inc

Steve's Trucking

GC Rentals & Sales, Inc

WWJB Contracting

Jack Pratt Screen Ad Co

Dunn Country Motors, LLC

Brad Evans DBA

Geomap Company

Easytel Communications

Dynasty Transportation,Inc

Brad Fenton Motors

Pam J.Mize

MDA Construction Inc

Cintas Corp #063

American Millennium Corp Inc

Sam Gordin

Best Specialty Services LLC

Arkansas Valley Electric

AT&T Mobility

Ronnie Allison Trucks Inc

Don McAllister LLC

M & M Portable Toilets

J-N-B Tire & Auto

Sabre-Chem Inc

Canadian Valley Elec Co-op

American Innovations

Eddie's Auto Parts

Flow Measurement Co Inc

Michael D Stack PC

Pangaea Inc

2

Richard L Piqune
Brad Pearce
RJCM Enterprises, Inc DBA
Arkoma Resource Management
Admiral Express Office Supply
Eufaula Hardware LLC
FedEx
Ikon Office Solutions
Sue's Recycling & Sanitation
Mahale Jackson Francis
Poster Compliance Center
Petroleum Club of Tulsa
Stacy Cooper
Pruitt Company of Ada,Inc
Devon Energy Production Co LP
Culligan of Tulsa
Vivian Rural Water District
Elizabeth McMullen
Marjorie M Brinton
Mike L & Glenda G Hoover
Jolen Operating Co
Peggy Sue Reynolds

## Well Interest and Royalty Owners

GC Rentals & Sales, Inc
Bennett Steel, Inc
Butler & Cook,Inc
Mineralogy, Inc
Okfuskee County Clerk
Mark L Hambric Rev Trust
D&S Oil Tools, Inc
John Muselmann
Dynasty Transportation,Inc
James Duffield
Shermco Consulting Ltd.
South River Resources LLC
Roppel Construction
Bynum & Company
M-I LLC
Brad Evans DBA
Coates Roofing & Sheet Metal

Bill White Co.
David Dodd Inc
Doris Burdine
DORIS ANN BURDINE, SURVIVING
DORIS ANN BURDINE, HEIR OF
ALVAREZ & MARSAL NORTH AMERICA
William H Huffman
Stelle & Associates, Inc
Satx Mineral & Royalty Ptr LTD
Michael T Logging
TK STANLEY INC
Vanhook Sanitation
J.R. Stewart
OKLAHOMA TAX COMMISSION
Frost Oil Company
Remington Pipe and Supply Co
Kester Oilfield Services
The Fleming Group LLC
MICHAEL C ADAY & ALLISON K
P D ANDERSON
MARY N BARNES
MARIE BARTLESON
D E CARTER
MARGUERITE CARTER
MARCELLA BUFORD
JASON L COMBS & HEATHER D
KAREN M COOK
RAYMOND A DIGIROLAMO
KEVIN DRAKE & B J DRAKE
RONNIE DRAKE & SARAH DRAKE
JOHN BENTON DUDLEY III
THOMAS SAMUEL DUDLEY
JERRY KEITH DUKE & JANICE DUKE
PEGGY SUE DUNHAM
BYRD E FARROW JR & KAY FARROW
H C FRANKLIN
FREEMAN TST ET AL
HELEN GORDON
NANCY B MARINI GILLETT
G C HALL, DECEASED
HALLOCK LIVING TST DTD 5/13/96

3

| | |
|---|---|
| KEVIN HARRIS & DUE HARRIS | ODYSSEA EQUITIES LLC |
| BETTY HOWELL | SARA A COLE |
| DOUGLAS HOWELL & BETTY HOWELL | DONALD L & PENELOPE B OLIVER |
| O K JOHNSON | LYNN MILBURN ABERNATHY |
| JOE RAY KIRKPATRICK | CARL DEGNER |
| NANCY S KIRKPATRICK, DECEASED | CLIFFORD A GRAY |
| MRS J E LAYDEN | HAROLD WADSACK & MILDRED S |
| LUFF CHILDRENS TRUST UTA | PACIFIC ENTERPRISES ABC CORP |
| MARK R LUFF | LESLIE LOU RENFROW & DAVID M |
| ANN DUDLEY MARSHALL | MARY INEZ KIRKPATRICK TRUST |
| CHARLES DAVID MARSHALL & | ELIZABETH ANN BROWN |
| BUDDY & ROZANN MCFARLAND REV | MARY DELL SMITH |
| EARL MCGUIRE & PATSY MCGUIRE | WILLIAM T O'BANNON |
| MILLION MINERALS LLC | PAUL THOMPSON DEC |
| EDWIN BRADLEY MILLION | ELBERT LEE SNEED JR & |
| LEWIS MITCHELL | TROUTMAN RANCH INC |
| CARA JEAN MOORE REV LIV TST | JOHN B DOUGLAS |
| LARRY NEWTON & SUSAN C NEWTON | JAMES M BALLINGER TR |
| SCOTT PLOWMAN & SARAH PLOWMAN | MARY B GRIMES TRUST UTD 1/1/91 |
| JAMES CARL POTEET & LYNDA S | RALPH H HOSS & FERN BURDINE |
| DAN RILEY & JANET RILEY H/W | CLARENCE F DOUGLAS |
| RLS JR LLC | JERLENA KING |
| HAROLD D ROBERTS & STACEY G | THEDA RUSHING |
| WAYNE SALISBURY | FRED P WENDEL & NANCY D WENDEL |
| MATTIE M SALTER | WILLIAM G BROTTON TRUST UDT |
| LISA A SAWYER | ANETA ARRINGTON DAVIS |
| NORMAN STAUFFER & CAROLYN | LAURA ARRINGTON NIGLIAZZO |
| CARL STRICKER | NANCY ELLEN GRIFFITH DVORAK |
| R L TURLEY DECEASED | HARRIET VIRGINIA GRIFFITH |
| GRACE K WADE | JAMES A GRIFFITH |
| ZELMA SCHONWALD WOLFF | T D BERRY INVESTMENT CO |
| SALLY M YOUNG | MALINDA BERRY FISHER, TTEE |
| Intralinks | C W DODSON JR |
| Andrews Davis,Attorney at Law | TIFFANY DOBSON EICHNER |
| Pam J.Mize | AMBER DODSON BETHEA, HEIR OF |
| UNITED HEALTHCARE | RACHEL DOBSON HAIRSTON |
| UNUM | BENJAMIN COATES & CO |
| Red Oak Energy Partners,LLC | MATHEW P HOGAN, HEIR OF NINA |
| Janes Welding | NOELLE N GRAY, HEIR OF NINA |
| Henry Diesel Service | JON L BURDINE, HEIR OF WALTER |
| International Medical Group | GALE ANN GLADD, HEIR OF WALTER |

4

T D STOUGH, DEC

RJCM Enterprises, Inc DBA

High Serra Sertco, LLC

Roger W Duncan

KIM E KLOTZ & KATHRYN M KLOTZ

CINDY HAWKINS

R P Abele

Emma Jean Baldwin

Heirs of R L Carter

Alvin Chitwood

James C Crabtree

Bessie M Davis

Malcolm Drone

Billy Filmon

Trustees of Grinnell College

Richard Todd Hain

Toby D Hain

Tommy A Hain

Lee D and Ann H Hopkins Revoc

Larry Hutton

Bernet L Jackson,Deceased

Bernice Jackson

Carlos Jackson

Carol Jackson

Cheryl D Jackson

Emily Jackson

George W Jackson, Deceased

James Jackson

Juanita Jackson

Jason Barrette Jackson

Jerry Lee Jackson

Mary Ella Jackson

Pamela Jackson

Phillip D Jackson

Robert Jackson

Ruby D Jackson

Vincent Jackson

William Jackson

Heirs of Willie A Jackson

Patricia Ann Lacey

Maude Ann Lees

Lynde Royalty Company

Florence Martin

Susan McCormick McCleery,

John M Miller

Charlye Mae Molden

Frank H Moores

Thelma L Murphy Revocable

M S Patton Trust

Joe S Peerson

Edward W Peters and Vicki

Donna Ray Range

Laura Mae Revels

John D Reynolds,Heir of

Jane L Robbins

Gordon Parker Saltsman.Jr

Michael Hunter Saltsman

Helen L Shroyer Family Trust

Thomas H Shroyer

Sneed Company

Teresa Stafford

Geneva Walton

Mary Robbins Wylie

Marshall Pruitt and

Margaret J Glasby,Revocable

| Professionals |
| --- |

GMP Securities LC

BURNET, DUCKWORTH & PALMER LLP

ALVAREZ & MARSAL NORTH AMERICA

Kline Elliott & Bryant PC

# SCHEDULE B TO SINGH AFFIDAVIT
## (Interested Parties Who Raymond James Has Represented)

| Company | Symbol | Status | Relationship to Mahalo | RJ Relationship |
|---------|--------|--------|------------------------|-----------------|
| Compressco Field Services Inc. | Private | Open | Trade Creditor | RJ is the lead manager on Compressco's pending initial public offering |
| Extarran Energy Solutions | EXH | Open | Trade Creditor | Raymond James Bank, FSB, an affiliate of Raymond James & Associates, Inc., is a lender to Exterran Holdings Inc. |
| McJunkin Red Man Corp | Private | Open | Trade Creditor | RJ did a fairness opinion for McJunkin in November 2006, and served as a co-manager for an initial public offering, which was subsequently withdrawn. Raymond James Bank, FSB, an affiliate of Raymond James & Associates, Inc., is a lender under the Revolving Credit Facility. |
| Superior Energy Services | SPN | Closed | Trade Creditor | RJ served as a managing underwriter on a debt offering in 2001 and 2006 as well as a co-lead manager on an equity offering in October 2004. |
| Warrior Energy Services | WGSV | Closed | Trade Creditor | RJ served as a co-lead manager on an equity offering in April 2006 |
| Wells Fargo | WFC | Closed | Lender | RJ served as a co-managing underwriter in equity offerings in March 2008, November 2008 and May 2009 |
| Williams Partners | WPZ | Closed | Trade Creditor | RJ served as co-manager on equity offerings in June 2006, December 2006 and December 2007 |
| Williams Pipeline Partners | WMZ | Closed | Trade Creditor | RJ served as co-manager on equity offerings in January 2008 |
| Williams Energy Partners | WEG | Closed | Trade Creditor | RJ served as co-manager on equity offerings in May 2002. Williams Energy Partners changed its name to Magellan Midstream Partners in 2003. |

1

**EXHIBIT C**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| MAHALO ENERGY (USA) INC., | ) | Case Number 09-80795 |
| Tax ID No. XX-XXX5447, | ) | (Chapter 11) |
| | ) | |
| Debtor. | ) | |

**ORDER APPROVING EMPLOYMENT**
**OF RAYMOND JAMES & ASSOCIATES, INC. AND COMPENSATION PURSUANT**
**TO 11 U.S.C § 328(a)**

Upon consideration of the Application for Order Approving Employment Agreement of Raymond James & Associates, Inc. (the "Application") filed by the Debtor in Possession, Mahalo Energy (USA) Inc. (the "Debtor"), and for good cause shown, the Application is granted.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the Debtor is authorized to employ Raymond James & Associates, Inc. ("Raymond James"), on the terms and conditions set forth in the Agreement attached as Exhibit A to the Application.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Raymond James is authorized to be compensated under the terms of the Agreement attached as Exhibit A to the

1

Application and pursuant to the requirements of 11 U.S.C. § 328(a).

The Debtor shall notify all interested parties of this Order.

IT IS SO ORDERED.


# # #


2