# PROFESSIONAL SERVICES AGREEMENT

THIS PROFESSIONAL SERVICES AGREEMENT dated **December 11, 2009** (this "Agreement"), between: **Baker & McKenzie LLP**, (the "Company"), and **Pinnacle Energy Services, LLC**, an Oklahoma Limited Liability Company (the "Contractor").

## WITNESSETH:

WHEREAS, the Company Represents the Official Committee of Unsecured Creditors (the "Committee") in the chapter 11 bankruptcy case of Mahalo Energy (USA), Inc. (the "Debtor"), which is pending as case number 09-80795 (the "Bankruptcy Case") in the United States Bankruptcy Court for the Eastern District of Oklahoma (the "Bankruptcy Court");

WHEREAS, the Company, on behalf of the Committee, seeks the Contractor's assistance with determining a going-concern valuation of the Debtor and its assets in connection with the Bankruptcy Case;

WHEREAS, the Contractor is duly qualified to provide the services contracted for herein;

WHEREAS, the Company, on behalf of the Committee, wishes to retain the Contractor to assist the Company, and the Contractor wishes to assist the Company, all upon the terms and conditions hereinafter set forth; and

WHEREAS, this Agreement is conditioned upon approval by the Bankruptcy Court.

NOW, THEREFORE, in consideration of the mutual covenants herein contained and other good and valuable consideration, the receipt, adequacy and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound, hereby agree as follows:

1. <u>Consultancy and Term.</u> Subject to earlier termination as hereinafter provided in Section 5 hereof, the Company, on behalf of the Committee, hereby engages Contractor as a consultant, and Contractor hereby agrees to accept such engagement and to perform the duties specified herein, upon the terms and conditions hereinafter set forth, for a period of **Six (6) months** (the "term of this Agreement") commencing on the date hereof.

2. <u>Duties.</u> During the term of this Agreement, the Contractor agrees to provide the Company for the Committee's benefit: (a) an engineering reserves and economic evaluation of the Debtor's oil and gas properties located in Eastern Oklahoma; (b) a fair market value or range of values for the Debtor's properties; (c) an opinion regarding the going-concern valuation of the Debtor; (d) written reports and evaluations concerning the assigned and (e) other related advisory and consulting services as the Company may request.

Contractor agrees to serve the Company faithfully and to perform the services reasonably requested hereunder to the best of Contractor's ability as expeditiously and as efficiently as practicable. In the event that Contractor becomes aware of any conflict of interest arising out of the performance of the duties hereunder, Contractor shall immediately advise the Company thereof and shall take such steps as may be necessary to avoid any interest of the Company being prejudiced as a result of such conflict of interest. In the performance of the duties hereunder, Contractor shall devote such personnel, energy and skills as are necessary to fully discharge the duties hereunder and promote the best interest of the Company.

3. Compensation. Contractor acknowledges that payment under this Agreement is subject to the Bankruptcy Court's approval and agrees to apply for and accept payment from the Debtor in accordance with the 11 U.S.C. § 101, et seq. (the "Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Bankruptcy Court's Orders. Company agrees to assist Contractor with making necessary applications for payment of fees in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Bankruptcy Court's orders. Contractor's current hourly rates are set forth on **Schedule 1** to this Agreement. Contractor shall maintain contemporaneous records of time spent and tasks performed by its professionals in accordance with the United State's Trustee's Guidelines for Reviewing Applications for Compensation and Reminbursement of Expenses Filed Under 11 U.S.C. § 330.

4. Expenses. In addition to the compensation specified in Section 3 hereof the Company will assist Contractor in obtaining reimbursement from the Debtor of all expenses incurred by Contractor in connection with the performance of consulting and advisory services under this Agreement, provided that Contractor provides the Company satisfactory written evidence of such expenses. Such expenses include but are not limited to mileage, parking, contractor supplied supplies, data acquisition, related phone expenses, and out-of-town travel expenses.

5. Termination. This Agreement may be terminated by either party hereto at any time upon ten (10) days prior written notice of such termination delivered to the other party hereto. The Company may terminate this Agreement for cause or upon any material breach by Contractor of any provision of this Agreement or if Contractor becomes insolvent or subject to a petition in bankruptcy at any time without prior written notice and without any further liability to Contractor.

6. Limitation on Authority. Without the express written consent of the Company, Contractor shall not have any authority to enter into, execute or deliver any contract, agreement or other instrument in the name of or on behalf of the Company or the Committee, and nothing herein contained shall authorize or empower Contractor to assume or create any obligation, liability or responsibility whatsoever, express or implied, in the name or on behalf of the Company or Committee or to bind the Company or Committee in any manner whatsoever.

7. Relationship Between Parties. Contractor has been retained by the Company, on behalf of the Committee, only for the purposes and to the extent set forth in this Agreement, and the relationship of Contractor to the Company is that of an independent contractor. The Company, on behalf of the Committee, agrees that Contractor shall not be restricted with respect to that portion of the time, energy and skill as Contractor is not obligated to devote to the Company hereunder, and Contractor shall be free to perform the same or substantially the same type of services hereunder to others. Contractor shall not be considered under the provisions of this Agreement or otherwise as an agent, employee or servant of the Company or of any entity in which the Company may from time to time have an interest.

The manner and means by which Contractor carries out the terms of this Agreement are within Contractor's sole discretion and Contractor has complete authority to control and direct the manner in which the work is performed hereunder, subject only to Contractor's performance of the duties hereunder in a timely and professional manner and the Company's right to supervise and monitor Contractor's work to ensure satisfactory and timely completion of the services requested of Contractor by the Company hereunder.

Contractor understands that Contractor is not entitled to unemployment compensation from the Company or the Committee since the Contractor is not an employee of the Company or the Committee. Contractor further understands that in the event of injury or death during the course of this Agreement, Contractor shall not be entitled to worker's compensation or other renumeration from the Company or the Committee. Contractor also understands that no deduction for federal or state taxes will be made from the

compensation due Contractor under the terms of this Agreement. Contractor is solely responsible for the payment of all taxes.

8. <u>Confidential Information.</u> Contractor covenants and agrees with the Company that:

(a) All work product of Contractor generated pursuant to this Agreement during the term of this Agreement and relating in any way to the Company's or the Committee's interest or litigation position in the Bankrupcty Case (collectively, "<u>Confidential Information</u>") belongs to the Company; and upon termination of this Agreement, Contractor shall, if requested by Company, surrender to the Company all papers, documents, writings and other property (including electronic versions thereof) produced during, or coming into Contractor's possession as a result of, the performance of the duties hereunder or relating to the Confidential Information.

(b) Contractor shall maintain in strict confidence all Confidential Information acquired by Contractor during the engagement with the Company and during the term of this Agreement; and that during and after the term of this Agreement, Contractor will not disclose any Confidential Information of the Company which Contractor may acquire to anyone other than in performance of the services required pursuant to this Agreement, unless expressly authorized in writing by the Company or as ordered by the Bankruptcy Court.

(c) It is expressly understood and agreed that although the Company and Contractor consider the restrictions contained in this Section 8 reasonable, if the aforesaid restrictive covenants are found by any court having jurisdiction to be unreasonable because they are too broad in any extent, then and in that case, the restrictions herein contained shall nevertheless remain effective, but shall be considered amended as may be considered to be reasonable by such court, and as so amended shall be enforced. It is understood that the special covenants and agreements in this Section 8 are made on the part of Contractor as inducement to the Company, on behalf of the Committee, to enter into the independent contractor consulting relationship reflected in this Agreement and with the understanding that except for giving of same by Contractor, the Company would not enter into such Agreement on behalf of the Committee with respect to the services called for hereunder or in any other capacity.

9. <u>Insurance.</u> Contractor represents that Contractor shall maintain the following insurance during the term of this Agreement:

(a) If applicable, Workers' Compensation which shall fully comply with applicable law and Employee's Liability Insurance with minimum limits of $1,000,000 U.S. Dollars each accident/disease.

(b) Commercial General Liability Insurance with minimum limits of $1,000,000 U.S. Dollars each person and $1,000,000 U.S. Dollars each occurrence for bodily injury and/or death, and $1,000,000 U.S. Dollars each occurrence for property damage. Such insurance shall include contractual liability coverage.

(c) Automobile Liability Insurance covering owned and non-owned vehicles used by Contractor with minimum limits of $1,000,000 U.S. Dollars each occurrence for bodily injury and/or death, and $1,000,000 U.S. dollars each occurrence for property damage.

(d) Such other insurance as may be required by applicable law or as may be required by the Company from time to time.

(e) All policies shall be issued by an insurer acceptable to the Company and shall include a waiver of subrogation in favor of the Company and, except for Workmen's Compensation Insurance, list the Company as an additional named insured.

(f) As requested by the Company, Contractor shall provide the Company and the Committee with a Certificate of Insurance, evidencing that the insurance coverage required under this Agreement is in effect.

10. <u>Notices.</u> All notices, requests, consents and other communications hereunder shall be in writing and shall be deemed to have been given if personally delivered or mailed, first class, registered or certified mail, postage prepaid, or via courier, facsimile or e-mail as follows:

If to Contractor:

Pinnacle Energy Services, LLC
Attn: John Paul Dick
9420 Cedar Lake Ave
Oklahoma City, OK 73114

If to the Company:

Baker & McKenzie LLP
Attn: Ali M.M. Mojdehi and Laurie Dahl Babich
2001 Ross Avenue
Suite 2300
Dallas, TX 75201

Either party may designate a different address by providing written notice of such new address to the other party hereto.

11. <u>Severability.</u> Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law but if any provision of this Agreement shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such provision or invalidity only, without invalidating the remainder of such provision or the remaining provisions of this Agreement.

12. <u>Assignment.</u> No right, benefit or entitlement under this Agreement may be assigned, nor any duty, obligation or responsibility delegated, by either party to this Agreement without the express written consent of the other party hereto; provided, however, that the Company, on behalf of the Committee, may assign this Agreement as necessary to protect the interests of the unsecured creditors of the Debtor.

13. <u>Binding Effect.</u> Subject to the provisions of Section 12 hereof, this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, successors, assigns and legal representatives.

14. <u>Specific Performance.</u> Contractor acknowledges that a remedy at law for any breach or attempted breach of Section 8 of this Agreement will be inadequate, agrees that the Company, on behalf of the Committee, shall be entitled to specific performance and injunctive and other equitable relief in case of any such breach or attempted breach, and further agrees to waive any requirement for the securing or posting of any bond in connection with the obtaining of any such injunctive or any other

DALDMS/671297.1

EXHIBIT A

Case: 09-80795    Doc #: 585-1    Filed in USBC ED/OK on 12/14/09    Page 4 of 6

equitable relief. Any such remedy shall be in addition to any damages which the Company, on behalf of the Committe, may be legally entitled to recover as a result of any breach of Section 8 of this Agreement by Contractor.

15. <u>Reporting.</u> Contractor shall, during the term of this Agreement, report to the designated person or persons of the Company.

16. <u>Governing Law.</u> This Agreement shall be construed and enforced in accordance with and governed by the internal laws of the State of Oklahoma.

17. <u>Entire Agreement.</u> This Agreement embodies the entire agreement and understanding between the parties hereto relating to the subject matters contained herein.

18. <u>Amendments.</u> This Agreement may be amended only by an instrument in writing executed by both of the parties hereto.

IN WITNESS WHEREOF, this Agreement has been executed as of the date first above written.

**COMPANY:** _____

By _____    Date: _____

Name: _____

Title: _____

**CONTRACTOR: PINNACLE ENERGY SERVICES, LLC**

By _[signature]_    Date: 12/11/09

Name: JOHN PAUL DICK

Title: Member / Manager

DALDMS/671297.1

**Pinnacle Energy Services**

## SCHEDULE OF RATES
Effective July 1, 2009

|  | Standard Projects<br>Hourly Rate, $/Hr | Litigation<br>Hourly Rate, $/Hr |
|---|---|---|
| Senior Engineers | 150 - 225 | 225 - 400 |
| Staff Engineers | 125 - 175 | 175 - 250 |
| Associate Engineers | 100 - 125 | 125 - 175 |
| Senior Technician, Financial Analysis | 75 - 125 | 100 - 150 |
| Staff Technician | 75 - 100 | 100 - 125 |
| Administrative Staff Support | 20 - 50 | 30 - 75 |
| Contract Geologists thru PES | 100 - 150 | 150 - 300 |
| Data, travel, software, supplies | @ cost | @ cost |