**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re
MAHALO ENERGY (USA) INC.,
Debtor.

Case No. 09-80795
Chapter 11

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEBTOR'S AMENDED PLAN OF REORGANIZATION
(DATED DECEMBER 4, 2009), AS AMENDED**

# TABLE OF CONTENTS

I. DEFINITIONS AND RULES OF CONSTRUCTION .......................................................................1

    A.    Definitions. ................................................................................................1

    B.    Rules of Construction. ............................................................................12

II. DESIGNATION OF CLASSES AND TREATMENT OF CLAIMS AND INTERESTS ................12

    A.    Summary and Classification of Claims and Interests. ............................12

    B.    Allowance and Treatment of Unclassified Claims. .................................14

        1.    Administrative Claims. .................................................................14

        2.    Priority Tax Claims. ....................................................................16

    C.    Classification and Treatment of Classified Claims and Interests. ..........16

        1.    Class 1 (O&G Royalty Trust Claims). ..........................................16

        2.    Class 2 (Secured Claims of Wells Fargo Foothill). ......................17

        3.    Class 3 (Claims of Ableco). ........................................................20

        4.    Class 4 (Claims Of Williams). ....................................................21

        5.    Class 5 (Compromised O&G Mechanics/Materialmen Claims). ......21

        6.    Class 6 (Non-Compromised Lien/Trust Claims). ........................22

        7.    Class 7 (Secured Tax Claims). ....................................................25

        8.    Class 8 (Priority Claims). ............................................................26

        9.    Class 9 (General Unsecured Claims, other than Small Claims). ......26

        10.    Class 10 (Small Claims). .............................................................28

        11.    Class 11 (Subordinated Claims). .................................................28

        12.    Class 12 (Interests). ....................................................................28

III. OPPORTUNITY TO PARTICIPATE IN O&G DRILLING VENDOR PROGRAM ..................28

IV. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ........................29

    A.    Rejection of Executory Contracts and Unexpired Leases. .....................29

        1.    Rejected Contracts and Leases. ...................................................29

    2.      Bar Date for Rejection Damage Claims.................................................30

B.    Assumption of Executory Contracts and Unexpired Leases...........................................30

    1.      Assumed Contracts and Leases.................................................30

    2.      Cure Payments. .................................................30

    3.      Objections to Assumption Or Proposed Cure Payment.................................................31

    4.      Resolution of Claims Relating to Assumed Contracts and Leases. ...................31

V. MEANS OF EXECUTION AND IMPLEMENTATION OF THE PLAN.......................................31

A.    Exit Financing.................................................31

B.    Funding of the Plan.................................................32

C.    Vesting of Assets Generally; Suspense Funds. .................................................33

D.    Preservation/Vesting of Rights of Action. .................................................33

E.    The Liquidating Trust. .................................................33

    1.      Appointment of the Liquidating Trustee.................................................33

    2.      Powers and Duties of the Liquidating Trustee.................................................34

    3.      Termination of the Liquidating Trust. .................................................34

    4.      Formation of the Advisory Committee. .................................................35

F.    Claim Objections. .................................................35

G.    Distribution of Property Under the Plan. .................................................35

    1.      Manner of Cash Payments Under the Plan. .................................................35

    2.      No *De Minimis* Distributions. .................................................36

    3.      No Distribution with Respect to Disputed Claims.................................................36

    4.      Delivery of Distributions and Undeliverable/Unclaimed Distributions. ............36

H.    Setoff, Recoupment and Other Rights. .................................................37

I.    Cancellation of Interests.................................................37

J.    Reorganized Mahalo. .................................................37

    1.      Board of Reorganized Mahalo. .................................................37

    2.      Officers of Reorganized Mahalo.................................................37

| | 3. | Articles of Incorporation and Bylaws. | 38 |
| | 4. | Terms of the New Common Stock | 38 |
| | 5. | Securities Exemption. | 38 |
| | 6. | Employee Equity Incentive Plan. | 38 |
| | 7. | Employee Benefit Plans. | 38 |
| K. | | Dissolution of the Creditors' Committee. | 38 |
| L. | | Post-Confirmation U.S. Trustee Fees. | 39 |

**VI. EFFECT OF CONFIRMATION OF THE PLAN** ....................................39

| A. | Binding Effect of Plan/Injunction. | 39 |
| B. | Compromise of Claims By The Debtor and the Estate. | 40 |
| C. | Exculpation and Limitation of Liability. | 41 |
| D. | Injunctive Relief Relating To Claims and Releases. | 41 |

**VII. OTHER PLAN PROVISIONS** .....................................................41

| A. | The Effective Date. | 41 |
| B. | Stay of Confirmation Order Shortened. | 42 |
| C. | Revocation of Plan/No Admissions. | 42 |
| D. | Exemption from Certain Transfer Taxes. | 42 |
| E. | Modifications of Plan. | 42 |
| F. | Cram-Down. | 43 |
| G. | Post-Effective Date Effect of Evidences of Claims or Interests. | 43 |
| H. | Post-Effective Date Notices. | 43 |
| I. | Successors and Assigns. | 43 |
| J. | Saturday, Sunday or Legal Holiday. | 43 |
| K. | Headings. | 43 |
| L. | Severability of Plan Provisions. | 43 |
| M. | Governing Law. | 44 |
| N. | Retention of Jurisdiction. | 44 |

O.     Plan Embodies Settlement. ..................................................................45

P.     Term of Bankruptcy Injunctions or Stays. .....................................45

Q.    Objections to Confirmation. ............................................................45

R.     Notices. ............................................................................................45

VIII. RECOMMENDATION AND CONCLUSION ............................................48

## TABLE OF EXHIBITS

Exhibit A      [Reserved]

Exhibit B      O&G Royalty Trust Claims Exhibit

Exhibit C      Compromised O&G Mechanics/Materialmen Claims Exhibit

Exhibit D      O&G Drilling Vendor Program Summary

Exhibit E      Avoidance Action Exceptions Exhibit

Exhibit F      Specified Assets Exhibit

Exhibit G      Williams Stipulation

Exhibit H      Penn Virginia Stipulation

Mahalo Energy (USA) Inc., a Delaware corporation, the debtor and debtor in possession in the above-captioned chapter 11 case (the "Debtor") proposes the following chapter 11 plan for the Debtor.

# I.

## DEFINITIONS AND RULES OF CONSTRUCTION

### A.     Definitions.

In addition to such other terms as are defined elsewhere in the Plan, the following terms (which appear in the Plan as capitalized terms) have the following meanings as used in the Plan:

**"Ableco"** means Ableco Finance LLC and its Affiliate assigns.

**"Ableco General Unsecured Deficiency Claim"** means that portion of Ableco's Claim that is not a Secured Claim.

**"Ableco Adequate Protection Claim"** means collectively, in respect of the diminution of Ableco's interests in Collateral (including cash collateral) resulting from the Debtor's use of Collateral , the following Claims conferred on Ableco pursuant to the orders entered in this Case pursuant to which the Debtor was authorized to use cash collateral: (i) a Secured Claim for such diminution, secured by a validly perfected security interest and Lien on all assets of the Estate, and (ii) to the extent such security interest and Lien are inadequate, an Administrative Claim under Bankruptcy Code section 507(b) for such diminution.

**"Ableco PIK Interest"** has the meaning ascribed to it in Section II.C.3.

**"Ableco Restructured Debt Amount"** has the meaning set forth in Section II.C.3.

**"Administrative Claim"** means a Claim for administrative costs or expenses entitled to priority in payment pursuant to Bankruptcy Code sections 503(b), 507(a)(2), 507(b), and/or 1114(e)(2), including a Prepetition Administrative Goods Claim.

**"Advisory Committee"** means the committee formed on the Effective Date pursuant to Section V.E.4.

**"Affiliate"** means, with respect to any person or entity, a person or entity that directly or indirectly, through one or more intermediaries, controls or, is controlled by or is under common control with such person or entity.

**"Allowance Date"** means, with respect to a particular Claim (as referenced herein), the date on which such claim becomes Allowed.

**"Allowed Administrative Claim"** means an Administrative Claim that is allowed as set forth in Section II.B.1.

**"Allowed"** means, when used with respect to a Claim or portion thereof, other than an Administrative Claim (as to which the term has the particular meaning indicated in Section II.B.1) or a Trust Claim, to the extent that:

(a) Either: (1) a proof of Claim was timely Filed; or (2) a proof of Claim is deemed timely Filed either under Bankruptcy Rule 3003(b)(1)-(2) or by a Final Order; and

(b) Either: (1) the Claim is not a Disputed Claim or a Disallowed Claim; or (2) the Claim is allowed by a Final Order or under the Plan, or

(c) The Claim is a Claim expressly Allowed under a Final Order or under the Plan.

Unless otherwise specified in the Plan, an Allowed Claim does not include interest on the Claim accruing after the Petition Date. Moreover, any portion of a Claim that is satisfied or released during the Case is not an Allowed Claim.

**"Allowed Trust Claim"** means a Claim as to which the holder is determined by the Bankruptcy Court or other court of competent jurisdiction to hold a valid, enforceable and non-avoidable interest in property arising from a statutory, common law, or equitable trust.

**"Avoidance Action Exception Exhibit"** means Exhibit E to the Plan.

**"Avoidance Actions"** means any and all claims, causes of action and/or rights under sections 544(b), 547, and 548 of the Bankruptcy Code to recover preferences and fraudulent transfers and the proceeds thereof.

**"Ballot"** means the ballot to vote to accept or reject the Plan.

**"Ballot Deadline"** means the deadline established by the Bankruptcy Court for the delivery of executed Ballots to the Ballot Tabulator.

**"Ballot Tabulator"** means Maribeth Mills, a legal assistant employed by Debtor's Counsel, or any other person or entity designated by Debtor's Counsel.

**"Bankruptcy Code"** or **"Code"** means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended, as applicable in the Case.

**"Bankruptcy Court"** or **"Court"** means the United States Bankruptcy Court for the Eastern District of Oklahoma, or any other court that properly exercises jurisdiction over the Case.

**"Bankruptcy Rules"** means, together, (a) the Federal Rules of Bankruptcy Procedure and (b) the Local Rules of the Bankruptcy Court, as applicable in the Case.

**"Bar Date"** means October 13, 2009 with respect to all Claims other than Administrative Claims, provided that (a) with respect to a Claim of a Governmental Unit (other than an Administrative Claim), it means November 17, 2009, and (b) if a later date is established for particular types of Claims set forth in an Order, then such later date with respect to such Claims.

**"Bar Date Order"** means that certain Order Establishing Bar Date For Filing Proofs of Claim, Docket No. 320, entered in the Case on August 13, 2009.

**"Blocked Account Control Agreement"** has the meaning set forth in Section II.C.2.

**"Business Day"** means a day that is not a Saturday, Sunday, or legal holiday, as such term is defined in Bankruptcy Rule 9006(a), on which commercial banks in Tulsa Oklahoma are open for business.

**"Case"** means the Debtor's case under chapter 11 of the Bankruptcy Code.

**"Claim"** means a claim, as Bankruptcy Code section 101(5), as supplemented by Bankruptcy Code section 102(2), defines the term "claim," against the Debtor, the Estate or property of the Estate, whether or not asserted.

**"Claim Objection"** means any right to object to, obtain the disallowance of, or obtain the subordination of a Claim pursuant to the Bankruptcy Code or applicable law, or object to the priority of any claim.

**"Claim Objection Deadline"** means, unless extended by Order of the Court, the later of: (a) 180 days after the Effective Date, and (b) 180 days after the date on which the subject proof of Claim was Filed.

**"Class"** means a group of Claims or Interests as classified in Section II.A.

**"Class 5 Opt-Out Election"** has the meaning set forth in Section II.C.5.

**"Clearwater"** means Clearwater Enterprises L.L.C.

**"Collateral"** means any property, or interest in property, of the Estate that is subject to a Lien, charge or encumbrance to secure the payment or performance of a Claim.

**"Committee Professionals"** means the professionals of the Creditors' Committee employed at the expense of the Estate pursuant to an order of the Court.

**"Compromise Party"** means the Secured Lenders. In addition, (a) each holder of Compromised O&G Mechanics/Materialmen Claim that does not timely exercise the Class 5 Opt-Out Election shall be a Compromise Party, and (b) in the event Williams elects to accept the Williams Compromise Treatment, Williams shall be a Compromise Party. Each of the Compromise Parties individually is referred to, as appropriate, as a "Compromise Party."

**"Compromise O&G Mechanics/Materialmen Claim Treatment"** has the meaning set forth in Section II.C.5.

**"Compromised O&G Mechanics/Materialmen Claim"** means an O&G Mechanics/ Materialmen Lien Claim or O&G Mechanics/Materialmen Trust Claim that is listed on the Compromised O&G Mechanics/Materialmen Claims Exhibit, as to which the holder does not timely exercise the Class 5 Opt-Out Election.

**"Compromised O&G Mechanics/Materialmen Claims Exhibit"** means Exhibit C to the Plan.

**"Confidentiality Agreements"** means all confidentiality agreements addressing the treatment of confidential information of the Debtor into which the Debtor and other parties entered prior to the Effective Date.

**"Confirmation Date"** means the date of entry of the Confirmation Order on the Court's docket.

**"Confirmation Hearing"** means the hearing by the Bankruptcy Court held pursuant to Bankruptcy Code section 1128(a) regarding confirmation of the Plan.

**"Confirmation Objection Deadline"** means the date fixed by the Court for the Filing of written objections to confirmation of the Plan.

**"Confirmation Order"** means the Bankruptcy Court order under Bankruptcy Code section 1129 confirming the Plan.

**"Creditors' Committee"** means the Official Committee of Unsecured Creditors appointed in the Case by the U.S. Trustee under Bankruptcy Code section 1102.

**"Cure Payment"** means the payment of cash or the distribution of other property (as the parties may agree or the Court may order), as necessary to cure defaults under an executory contract or unexpired lease of the Debtor so that the Debtor may assume the contract or lease under Bankruptcy Code section 365(a).

**"Debtor" or "Mahalo"** means Mahalo Energy (USA) Inc., a Delaware corporation.

**"Debtor's Counsel"** means Kline, Kline, Elliot & Bryant, P.C.

**"Debtor's Professionals"** means Debtor's Counsel and the other professionals of the Debtor employed at the expense of the Estate pursuant to an order of the Court.

**"Designated Avoidance Actions"** means (i) the Avoidance Actions of the Estate, excluding (a) Avoidance Actions against the parties listed on the Avoidance Exception Exhibit, (b) Avoidance Actions against Williams, and (c) Avoidance Actions that are released pursuant to the Plan or the Confirmation Order and (ii) all claims, causes of action, and rights of action, at law or equity that may be asserted on behalf of the Estate against any of the Debtor's and/or the Parent's current or former directors and/or officers, and Burnet Duckworth & Palmer LLP, arising from any act or omission occurring before the Petition Date, other than those related to the filing and prosecution of the Case.

**"Disallowed Claim"** means a Claim, or any portion thereof, that: (a) is not listed on the Debtor's Schedules, or is listed therein as contingent, unliquidated, disputed, or in an amount equal to zero, and whose holder has failed to timely File a proof of Claim; or (b) the Bankruptcy Court has disallowed pursuant to court order.

**"Disbursing Agent"** means, as the context dictates: (a) Reorganized Mahalo, with respect to disbursements due under the Plan in respect of all Allowed Claims other than Allowed General Unsecured Claims, and (b) the Liquidating Trustee, with respect to disbursements due under the Plan and Liquidating Trust Agreement in respect of Allowed General Unsecured Claims only.

**"Disclosure Statement"** means that certain *Disclosure Statement Describing Debtor's Amended Plan of Reorganization Dated December 4, 2009,* as amended or modified, Filed in connection with the Plan.

**"Disputed Claim"** means a Claim:

(a) as to which a proof of Claim is Filed or is deemed Filed under Bankruptcy Rule 3003(b)(1); and

(b) (i) that is the subject of a timely Filed objection (including an objection based upon Bankruptcy Code section 502(d)) that has not been denied by a Final Order or withdrawn; or

(ii) that is listed on the Debtor's Schedules as disputed, contingent or unliquidated and the Claim Objection Deadline has not occurred.

**"Distribution Date"** means the date occurring on or as soon as reasonably practicable after the Effective Date, but in no event later than fourteen (14) days following the Effective Date, on which certain distributions shall be made to the holders of Allowed Claims, as specified in the Plan.

**"Effective Date"** has the meaning specified in Section VII.A.

**"Enerfin"** means Enerfin Resources Company and its Affiliates.

**"Estate"** means the estate of the Debtor created under Bankruptcy Code section 541.

**"Exhibit"** means an exhibit accompanying the Plan or to be Filed by the Exhibit Filing Date. All Exhibits shall be in a form mutually acceptable to the Debtor and Ableco.

**"Exhibit Filing Date"** means the last Business Day that is at least ten (10) days before the Confirmation Hearing.

**"Exit Financing"** means the secured financing to be provided by Ableco or an alternative lender, pursuant to the Exit Financing Agreement.

**"Exit Financing Agreement"** means the credit facility in respect of the Exit Financing in substantially the form to be Filed by the Exhibit Filing Date.

**"Exit Financing Documents"** means the Exit Financing Agreement, and all security agreements, pledge agreements, instruments and ancillary documents entered into in connection with the Exit Financing Agreement.

**"Exit Financing Lenders"** means each of the financial institutions party to the Exit Financing Agreement.

**"Existing Stock"** means all of the shares of common stock in the Debtor issued and outstanding, any warrants or options with respect thereto, and any other right or related Interest or Claim with respect thereto.

**"File", "Filed", or "Filing"** means duly and properly filed with the Bankruptcy Court and reflected on the Bankruptcy Court's official docket.

**"Final Order"** means an order or judgment of the Bankruptcy Court entered on the Bankruptcy Court's official docket in the Case:

> (a)    that has not been reversed, rescinded, vacated, stayed, modified, or amended;

> (b)    that is in full force and effect; and

> (c)    with respect to which: (1) the time to appeal, petition for certiorari, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument, or rehearing shall then be pending; or (2) if an appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari, or move for new trial, reargument, or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 59 or 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such order, shall not cause such order not to be a Final Order.

**"General Unsecured Claim"** means a Claim that is not an Administrative Claim, a Priority Claim, a Priority Tax Claim, a Secured Claim, a Trust Claim, a Compromised O&G Mechanics/Materialmen Claim, the Ableco General Unsecured Deficiency Claim, an Ableco Adequate Protection Claim, or a Subordinated Claim.

**"Gas Marketer"** means Clearwater, Enerfin or Oneok.

**"Governmental Unit"** has the meaning specified in Bankruptcy Code section 101(27).

**"Impaired"** means, with respect to any Class of Claims or Interest, a Class of Claims or Interests that is impaired under the Plan pursuant to Bankruptcy Code section 1124.

**"Intercreditor Agreement"** has the meaning set forth in Section II.C.2.

**"Interest"** means: (i) any equity security as defined in Bankruptcy Code section 101(16), whether or not asserted, of any equity security holder of the Debtor, as defined in Bankruptcy Code section 101(17) including the Existing Stock.

**"LIBOR"** means, with respect to interest provided herein on an Allowed Claim, the offered rate per annum (rounded upwards, if necessary, to the next 1/100%) for deposits of Dollars for a period of three months that is published in The Wall Street Journal, Eastern Edition as the "London Interbank Offered Rate" on the date on which the Bankruptcy Court enters an order determining that such Claim is an Allowed Claim of the type entitled to interest hereunder. If no such offered rate exists, such rate will be the rate of interest per annum, as determined by Reorganized Mahalo (rounded upwards, if necessary, to the nearest 1/100 of 1%) at which deposits of Dollars in immediately available funds are offered on the date on which the Bankruptcy Court enters an order determining that such Claim is an Allowed Claim of the type entitled to interest, by major financial institutions reasonably satisfactory to Reorganized Mahalo in the London interbank market for a period of three months for a principal amount approximately equal to the amount of the Allowed Claim. If the Board of Governors of the Federal Reserve imposes a reserve percentage with

respect to LIBOR deposits, then LIBOR shall be the foregoing rate, divided by 1 minus the reserve percentage.

**"Lien"** has the meaning specified in Bankruptcy Code section 101(37).

**"Liquidating Trust Agreement"** means that certain Liquidating Trust Agreement among the Debtor, the Creditors' Committee, and the Liquidating Trustee setting forth the terms and conditions of the Liquidating Trustee's retention by the Liquidating Trust, in substantially the form to be Filed by the Exhibit Filing Date.

**"Liquidating Trustee"** means the individual to be appointed pursuant to the Confirmation Order to administer the Liquidating Trust.

**"Liquidating Trust"** means the trust to be formed in accordance with Section V.E and the Liquidating Trust Agreement, for the purpose of liquidating certain assets transferred to it pursuant to the Plan, and making distributions of the trust res to the holders of Allowed General Unsecured Claims in accordance with the Plan.

**"New Board Members"** means the members of the board of directors for Reorganized Mahalo from and after the Effective Date. The New Board Members shall be identified on a Schedule of New Board Members, which will be Filed prior to the Exhibit Filing Date and shall be deemed incorporated into the Plan upon Filing.

**"New Common Stock"** means the common stock in Reorganized Mahalo, which is to be distributed on the Effective Date to Ableco or its designee.

**"Non-Compromised Lien/Trust Claim"** means any O&G Mechanics/Materialmen Lien Claim or O&G Mechanics/Materialmen Trust Claim that is not a Compromised O&G Mechanics/Materialmen Claim because it is not listed on the Compromised Mechanics/Materialmen Claims Exhibit or the holder of a Claim listed thereon has timely exercised the Class 5 Opt-Out Election.

**"Non-Ordinary Course Administrative Claim"** means any Administrative Claim other than an Ordinary Course Administrative Claim, a Claim for U.S. Trustee Fees, Cure Payments, Professional Fee Claims or Prepetition Administrative Goods Claims.

**"Oneok"** means Oneok Energy Marketing and its Affiliates.

**"Ordinary Course Administrative Claims"** means Administrative Claims — other than a Claim for U.S. Trustee Fees, Cure Payments, Professional Fee Claims and Prepetition Administrative Goods Claims — based upon liabilities that the Debtor has incurred after the Petition Date, in the ordinary course of its business and that are unpaid as of the Effective Date.

**"O&G Drilling Vendor Election"** has the meaning set forth in Section III .

**"O&G Drilling Vendor Program"** means the program described in the O&G Drilling Vendor Program Summary under which holders of Allowed Claims will have an opportunity, as described therein, to provide new trade credit to Reorganized Mahalo for goods and services necessary to drill certain new gas wells and receive a share of the revenue that may be derived from such wells.

**"O&G Drilling Vendor Program Summary"** means the summary attached hereto as Exhibit D.

**"O&G Leases"** means such oil, gas and/or mineral gas leases in which the Debtor holds the interests of a lessee.

**"O&G Lease Assumption Order"** means collectively, such order or orders as the Bankruptcy Court may enter (i) determining that the O&G Leases are unexpired leases within the meaning of Bankruptcy Code section 365(a) and (ii) authorizing the assumption the cure of the O&G Leases.

**"O&G Mechanics/Materialmen Lien Claim"** means a Claim on account of work performed or materials provided for the construction, improvement and maintenance of an oil or gas well as to which the holder asserts that the Claim is secured by a validly perfected Lien on one or more oil and gas wells, oil and gas leases, oil and gas interests, and/or the proceeds thereof. O&G Mechanics Lien Claims may be asserted by the operator of an oil and gas well that procured such services and/or materials, or by the vendor that directly provided such services and/or materials. O&G Mechanics Lien Claims include Claims that are subject to Liens asserted under 42 Okla. Stat. § 144, 52 Okla. § 87.1, a contractual Lien arising from a joint operating agreement, or Article 9 of the Uniform Commercial Code, or other applicable law.

**"O&G Mechanics/Materialmen Trust Claim"** means a Claim in respect of funds remitted to the Debtor for work performed or to be performed, or materials provided or to be provided, for the construction, improvement and maintenance of an oil or gas well as to which the holder asserts that its Claim is entitled to trust status, including a Claim to which trust status is asserted under 42 Okla. Stat. § 144.2 or other applicable law.

**"O&G Royalty Trust Claim"** means a Claim on account of royalty interests or overriding royalties in oil or gas wells and/or oil or gas leases that is listed on the O&G Royalty Trust Claims Exhibit.

**"O&G Royalty Trust Claims Exhibit"** means Exhibit B to the Plan.

**"Parent"** means Mahalo Energy Ltd., an Alberta, Canada company.

**"Petition Date"** means May 21, 2009.

**"Plan"** means the *Debtor's Amended Plan of Reorganization (Dated December 4, 2009)*, including all exhibits and schedules annexed hereto, and all exhibits and schedules referenced herein, as such exhibits and schedules are Filed, all as the foregoing subsequently may be modified, supplemented or amended.

**"Prepetition Administrative Goods Claim"** means a claim under Bankruptcy Code section 503(b)(9) for the value of any goods received by the Debtor within 20 days before the Petition Date, where the goods were sold to the Debtor in the ordinary course of the Debtor's business, excluding any duplicative reclamation claim with respect to the same goods.

**"Prepetition Credit Agreement"** means that Second Amended and Restated Credit Agreement among Mahalo Energy Ltd., as the Parent, Mahalo Energy (USA) Inc., as the Borrower, Ableco Finance

LLC as Administrative Agent and as Processing Agent, Wells Fargo Foothill, LLC, as Processing Agent, and other lenders party thereto, dated as of July 11, 2008, as it may have been amended or modified from time to time.

**"Prime Rate"** means the prime rate (the base rate on corporate loans at large U.S. money center commercial banks) as published in the Money Rates section of the Wall Street Journal.

**"Priority Claim"** means a Claim entitled to priority against the Estate under Bankruptcy Code sections 507(a)(4), 507(a)(5), 507(a)(7), or 507(a)(9). Priority Claims do not include any Claims incurred after the Petition Date. Priority Claims do not include Priority Tax Claims.

**"Priority Tax Claim"** means a Claim entitled to priority against the Estate under Bankruptcy Code section 507(a)(8). Priority Tax Claims do not include any Claims incurred after the Petition Date, except to the extent provided in Bankruptcy Code section 502(i).

**"Professional Fee Claim"** means a Claim under Bankruptcy Code sections 327, 328, 330, 331, 503, or 1103 for compensation for professional services rendered or expenses incurred on behalf of the Estate either by one of the Debtor's Professionals or one of the Committee Professionals.

**"Pro Rata"** means proportionately so that the ratio of (a) the amount of consideration distributed on account of a particular Allowed Claim to (b) the Allowed Claim, is the same as the ratio of (x) the amount of consideration available for distribution on account of Allowed Claims in the Class in which the particular Allowed Claim is included to (y) the amount of all Allowed Claims of that Class.

**"Rejection Damage Claim"** means a claim arising under Bankruptcy Code section 365 from the rejection by the Debtor of an unexpired lease or executory contract.

**"Related Compromise Parties"** means, with respect to a Compromise Party, all Affiliates, parent companies, subsidiaries, members, shareholders, partners, predecessors-in-title, successors, heirs, assigns, representatives, attorneys, accountants, agents, investment bankers, consultants, financial advisors and officers and directors thereof, whether past or present. Each of the Related Compromise Parties individually is referred to, as appropriate, as a "Related Compromise Party."

**"Reorganized Debtor"** or **"Reorganized Mahalo"** means the Debtor, from and after the Effective Date.

**"Restated Ableco Credit Agreement"** means the amended and restated credit facility in respect of Ableco's Secured Claims in substantially the form to be Filed by the Exhibit Filing Date.

**"Restated Ableco Credit Documents"** means the Restated Ableco Credit Agreement, and all security agreements, pledge agreements, instruments and ancillary documents entered into in connection with the Restated Ableco Credit Agreement.

**"Retained Actions"** means all claims, causes of action, and other rights preserved and vested under the Plan pursuant to Section V.D of the Plan.

**"Rights of Action"** means all actions (including Avoidance Actions), claims, costs, causes of action, damages, demands, debts, expenses (including attorneys' fees), judgments, losses (including any claims for contribution or indemnification), liabilities, obligations, rights, or suits, whether past or present,

liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date relating in any way to the Debtor, its assets or the Case, including any claim or matter arising under or relating to the Prepetition Credit Agreement, any Lien granted thereunder or thereafter in favor of a Secured Lender, and any Claim of a Secured Lender Allowed under the Plan.

**"Schedule of Assumed Contracts and Leases"** means the schedule of contracts and leases to be assumed under the Plan, which will be Filed eighteen (18) days prior to the commencement of the Confirmation Hearing.

**"Schedule of Rejected Contracts and Leases"** means the schedule of contracts and leases to be rejected under the plan, which will be Filed eighteen (18) days prior to the commencement of the Confirmation Hearing.

**"Schedules"** means the Schedules of Assets and Liabilities Filed by the Debtor on or about May 21, 2009, as amended by the filing of certain Amended Schedules of Liabilities on June 5, 2009, and as they may be further amended subsequently.

**"Secured Claim"** means a Claim that is secured by a Lien on Collateral as of the Petition Date. A Claim is a Secured Claim under the Plan only to the extent the Lien securing such Claim has not been avoided under chapter 5 of the Bankruptcy Code, or is otherwise determined to be invalid under the Bankruptcy Code or applicable law, and, if the preceding is satisfied, only to the extent of the value, as such value existed as of the date of the Confirmation Hearing, of the claimholder's interest in the Debtor's interest in Collateral, or to the extent of the amount subject to setoff, whichever is applicable.

**"Secured Lender"** means one of Wells Fargo Foothill or Ableco, and the predecessor agents and lenders under the Prepetition Credit Agreement

**"Secured Lenders"** means Wells Fargo Foothill, Ableco, and the predecessor agents and lenders under the Prepetition Credit Agreement.

**"Secured Tax Claim"** means the Secured Claim of a governmental unit for unpaid taxes arising before the Petition Date.

**"Small Claim"** means a Claim that is either: (i) a General Unsecured Claim that is less than or equal $5,000 or (ii) a General Unsecured Claim or Compromised O&G Mechanics/Materialmen Claim that the holder thereof has voluntarily reduced to $5,000 pursuant to the Small Claims Election.

**"Small Claims Election"** means the timely election by the holder of a General Unsecured Claim or Compromised O&G Mechanics/Materialmen Claim to reduce such holder's Claim to $5,000 and receive treatment under Class 10. The Small Claims Election shall have no bearing on whether the holder's Claim is ultimately an Allowed Claim or Disallowed Claim.

**"Specified Assets"** means the interests of the Debtor in the mineral leaseholds identified on Exhibit F to the Plan (the Specified Assets Exhibit), excluding the exceptions noted therein. The exceptions noted in Exhibit F constitute encumbered portions of mineral leaseholds as to which certain other portions are unencumbered. The encumbered portions of the mineral leaseholds contained on Exhibit F do not constitute

Specified Assets. The Specified Assets shall be treated under the Plan in accordance with Section II.C.9 of the Plan.

**"Subordinated Claim"** means any Claim that is subject to subordination to all General Unsecured Claims, whether by contract, by operation of law, or in accordance with equitable principles.

**"Suspense Funds"** means, as of the Effective Date, (i) funds owing to Mahalo by a Gas Marketer on account of the sale of gas from wells or leaseholds in which Mahalo holds an interest, as to which payment has been withheld by such Gas Marketer in response to the delivery of one or more notices by a party other than Mahalo asserting an interest in such funds, and/or (ii) such funds that satisfy the description in the foregoing subparagraph (i), except that such funds have been remitted to Mahalo and are on deposit pursuant to an order of the Bankruptcy Court.

**"Trust Claim"** means a Claim as to which the holder asserts an interest in property arising from a statutory, common law, or equitable trust.

**"Unimpaired"** means, with respect to any Class of Claims or Interest, a Class of Claims or Interests that is not impaired under the Plan pursuant to Bankruptcy Code section 1124.

**"U.S. Trustee"** means the Office of the United States Trustee for the Eastern District of Oklahoma.

**"U.S. Trustee Fees"** means fees or charges assessed against the Estate pursuant to 28 U.S.C. § 1930.

**"Wells Fargo Foothill**" means Wells Fargo Foothill, LLC.

**"Wells Fargo Foothill PIK Interest"** has the meaning ascribed to it in Section II.C.2.

**"Wells Fargo Foothill Restated Credit Agreement"** means the credit agreement, dated as of the Effective Date, by and among Reorganized Mahalo, as the Borrower, and Wells Fargo Foothill, as agent for the financial institutions party thereto as lenders.

**"Wells Fargo Foothill Restated Credit Documents"** means the Wells Fargo Foothill Restated Credit Agreement, and all security agreements, pledge agreements, instruments and ancillary documents entered into in connection with the Wells Fargo Foothill Restated Credit Agreement.

**"Wells Fargo Foothill Restructured Debt Amount"** has the meaning set forth in Section II.C.2.

**"Williams"** means, collectively, Williams Production, Williams Arkoma, and their respective Affiliates.

**"Williams Arkoma"** means Williams Arkoma Gathering Company, LLC.

**"Williams Avoidance Actions"** means any and all Avoidance Actions and the proceeds thereof against Williams.

**"Williams Claims"** means all Claims asserted by Williams, including Secured Claims asserted by Williams.

**"Williams Production"** means Williams Production Mid-Continent Company.

**B.     Rules of Construction.**

1.     The rules of construction in Bankruptcy Code section 102 apply to this Plan.

2.     Bankruptcy Rule 9006(a) applies when computing any time period under the Plan.

3.     A term that is used in this Plan and that is not defined in this Plan has the meaning, if any, attributed to that term in the Bankruptcy Code or the Bankruptcy Rules.

4.     The definition given to any term or provision in the Plan supersedes and controls any different meaning that may be given to that term or provision in the Disclosure Statement.

5.     Whenever it is appropriate from the context, each term in this Plan, whether stated in the singular or the plural, includes both the singular and the plural.

6.     Any reference to a document or instrument being in a particular form or on particular terms means that the document or instrument will be substantially in that form or on those terms.  No material change to the form or terms may be made after the Confirmation Date without the consent of any party materially and negatively affected by the change.

7.     Any reference to an existing document means the document as it has been, or may be, amended or supplemented.

8.     Any reference to a person or entity includes the successors and assigns of such person or entity.

9.     Unless otherwise indicated, the phrase "under the Plan" or "under this Plan" and similar words or phrases refer to this Plan in its entirety rather than to only a portion of the Plan.

10.     Unless otherwise specified, all references to Sections or Exhibits are references to this Plan's Sections or Exhibits.

11.     The words "herein," "hereto," "hereunder," and other words of similar import refer to this Plan in its entirety rather than to only a particular portion.

12.     The terms "includes" or "including" and other forms thereof mean "includes without limitation," "including without limitation," and the like.


# II.

## DESIGNATION OF CLASSES AND TREATMENT OF CLAIMS AND INTERESTS

**A.     Summary and Classification of Claims and Interests.**

This Section classifies Claims and Interests, except for Administrative Claims and Priority Tax Claims, which are not classified, for all purposes, including voting, confirmation, and distributions under the Plan.  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest falls within the Class description.  To the extent that part of the Claim or Interest falls within a different Class description, the Claim or Interest is classified in that different Class.

To the extent the Bankruptcy Court (or an appellate court of competent jurisdiction) determines that a Secured Claim should not be classified in the same Class with specified other Secured Claims, such Secured Claim shall be deemed to be placed in its own separate Class for purposes of the Plan.

The following table summarizes unclassified Claims and the Classes of Claims and Interests under the Plan:

| CLASS/ UNCLASSIFIED CLAIMS | DESCRIPTION | IMPAIRED/ UNIMPAIRED | VOTING STATUS |
|---|---|---|---|
| Unclassified Claims | Administrative Claims and Priority Tax Claims | Unimpaired | Not Permitted to Vote |
| Class 1 | O&G Royalty Trust Claims | Unimpaired | Deemed to Accept - Vote Not Solicited |
| Class 2 | Secured Claims of Wells Fargo Foothill | Impaired | Permitted to Vote |
| Class 3 | Claims of Ableco | Impaired | Permitted to Vote |
| Class 4 | Claims Of Williams | Impaired | Permitted to Vote |
| Class 5 | Compromised O&G Mechanics/Materialmen Claims | Impaired | Permitted to Vote |
| Class 6 | Non-Compromised Lien/Trust Claims | Impaired | Permitted to Vote |
| Class 7 | Secured Tax Claims. | Impaired | Permitted to Vote |
| Class 8 | Priority Claims | Impaired | Permitted to Vote |
| Class 9 | General Unsecured Claims (other than Small Claims) | Impaired | Permitted to Vote |
| Class 10 | Small Claims | Impaired | Permitted to Vote |
| Class 11 | Subordinated Claims | Impaired | Deemed to Reject – Vote Not Solicited |
| Class 12 | Interests | Impaired | Deemed to Reject – Vote Not Solicited |

**Notwithstanding anything to the contrary contained in the Plan, (i) no Claim may constitute an Allowed Secured Claim unless such Claim is an Allowed Secured Claim of the Secured Lenders or is a Claim that is senior in priority to the Allowed Secured Claims of the Secured Lenders and (ii) no distributions will be made and no rights will be retained on account of any Claim or Interest that is not Allowed.**

Except as otherwise expressly provided in this Plan, the treatment in this Plan is in full and complete satisfaction of the legal, contractual, and equitable rights (including any Liens) that each person or entity holding an Allowed Claim or an Allowed Interest may have in or against the Debtor, the Estate, Reorganized Mahalo, the Liquidating Trust or their respective property. This treatment supersedes and replaces any agreements or rights those persons or entities may have in or against the Debtor, the Estate, Reorganized Mahalo, the Liquidating Trust or their respective property. All distributions in respect of Allowed Claims will be allocated first to the principal amount of such Allowed Claim, as determined for federal income tax purposes, and thereafter, to the remaining portion of such Allowed Claim, if any.

**B.    Allowance and Treatment of Unclassified Claims.**

    **1.    Administrative Claims.**

        **(a) U.S. Trustee Fees.**

U.S. Trustee Fees shall be allowed in accordance with 28 U.S.C. § 1930. Reorganized Mahalo will pay to the U.S. Trustee all fees due and owing under 28 U.S.C. § 1930 in cash on the Distribution Date.

        **(b) Cure Payments.**

Cure Payments with respect to executory contracts and unexpired leases assumed pursuant to the Plan shall be paid in accordance with Section IV.B.2 of the Plan.

        **(c) Professional Fee Claims.**

A Professional Fee Claim of one of the Debtor's Professionals or one of the Committee Professionals will be allowed only if:

        (a)     On or before 60 days after the Effective Date, the entity holding such Professional Fee Claim both Files with the Court a final fee application or a motion requesting allowance of the fees and serves the application or motion on the Debtor's Counsel, counsel to Reorganized Mahalo, counsel to Ableco, counsel to Wells Fargo Foothill, and the U.S. Trustee; and

        (b)     The Court allows the Claim pursuant to a Final Order.

Reorganized Mahalo, the Secured Lenders or any other party in interest may File an objection to such application or motion within 20 days of the filing of such application or motion. **Any party holding a Professional Fee Claim that does not timely File and serve a fee application or motion for payment thereof will be forever barred from asserting such Claim against the Debtor, the Estate, Reorganized Mahalo, the Liquidating Trust, or their respective property.**

Reorganized Mahalo will pay or cause to be paid an Allowed Professional Fee Claim, in cash, within (a) fifteen (15) days after the date on which the Bankruptcy Court allows such Claim pursuant to a Final Order, or (b) such other terms as may be mutually agreed upon between the holders of such Professional Fee Claim and the Reorganized Debtor.

### (d) Prepetition Administrative Goods Claims.

Unless the Debtor or Reorganized Mahalo otherwise agree, or unless otherwise expressly provided herein, a Prepetition Administrative Goods Claim will be allowed only if:

(a)     On or before 60 days after the Effective Date (unless the deadline to do so has otherwise expired), the entity holding a Prepetition Administrative Goods Claim both Files with the Court a motion requesting allowance of such Administrative Claim and serves the motion on the Debtor's Counsel, counsel to Reorganized Mahalo, counsel to Ableco, counsel to Wells Fargo Foothill, and the U.S. Trustee; and

(b)     The Court allows the Claim by Final Order.

Reorganized Mahalo, the Secured Lenders or any other party in interest may File an objection to such motion within 20 days of the filing of such motion.  **Any party holding a Prepetition Administrative Goods Claim that does not timely File and serve a motion for payment thereof will be forever barred from asserting those such Claim against the Debtor, the Estate, Reorganized Mahalo, the Liquidating Trust, or their respective property.**

Unless the entity holding an Allowed Prepetition Administrative Goods Claim agrees to different treatment, Reorganized Mahalo will pay to the entity holding such Allowed Administrative Claim cash in the full amount of such Allowed Administrative Claim, on or before the latest of: (a) the Distribution Date; (b) fifteen (15) days after the date on which the Prepetition Administrative Goods Claim becomes an Allowed Prepetition Administrative Goods Claim pursuant to a Final Order; and (c) the date on which the Allowed Prepetition Administrative Goods Claim first becomes due and payable in accordance with its terms.

### (e) Ordinary Course Administrative Claims.

An entity holding an Ordinary Course Administrative Claim may, but need not, File a motion or request for payment of its Claim.  The Debtor, Reorganized Mahalo or the Secured Lenders may File an objection to an Ordinary Course Administrative Claim in their discretion.  Unless the Debtor, Reorganized Mahalo or the Secured Lenders object to an Ordinary Course Administrative Claim, such Claim will be allowed in accordance with the terms and conditions of the particular transaction that gave rise to the Claim, subject to all defenses, rights of recoupment, offsets and other rights arising under any agreements between the holder of such Claim and the Debtor, and/or applicable law.

### (f) Non-Ordinary Course Administrative Claims.

Unless the Debtor or Reorganized Mahalo otherwise agree, or unless otherwise expressly provided herein, Non-Ordinary Course Administrative Claim will be allowed only if:

(a)     On or before 60 days after the Effective Date, the entity holding such Non-Ordinary Course Administrative Claim both Files with the Court a motion requesting allowance of the Administrative Claim and serves the motion on the Debtor's Counsel, counsel to Reorganized Mahalo, counsel to Ableco, counsel to Wells Fargo Foothill, and the U.S. Trustee; and

(b)     The Court allows the Claim by Final Order.

Reorganized Mahalo, the Secured Lenders or any other party in interest may File an objection to such motion within 20 days of the filing of such motion. **Any party holding a Non-Ordinary Course Administrative Claim that does not timely File and serve a motion for payment thereof will be forever barred from asserting such Claim against the Debtor, the Estate, Reorganized Mahalo, the Liquidating Trust, or their respective property.**

Unless the party holding an Allowed Non-Ordinary Course Administrative Claim agrees to different treatment, Reorganized Mahalo will pay to the party holding such Allowed Administrative Claim cash in the full amount of such Allowed Administrative Claim, on or before the latest of: (a) the Distribution Date; (b) fifteen (15) days after the date on which the Non-Ordinary Course Administrative Claim becomes an Allowed Non-Ordinary Course Administrative Claim pursuant to a Final Order; and (c) the date on which the Allowed Non-Ordinary Course Administrative Claim first becomes due and payable in accordance with its terms.

### (g) Costs of the Liquidating Trust.

Allowance and payment of the post-Effective Date fees and expenses of the Liquidating Trustee, the fees and expenses of any professionals employed by the Liquidating Trustee, and all other costs and liabilities incurred by the Liquidating Trustee and/or Liquidating Trustee shall be borne exclusively by the Liquidating Trust, as described in Section V.E.1.

### 2. Priority Tax Claims.

At the election of Reorganized Mahalo, each Allowed Priority Tax Claim (i) will be reinstated and paid on the date that such Allowed Priority Tax Claim first becomes due and payable in accordance with its terms, (ii) will be paid cash in the Allowed amount of such Allowed Priority Tax Claim on the Distribution Date, (iii) will be satisfied with a promissory note equal to the Allowed amount of such Allowed Priority Tax Claim, bearing interest accruing from the Effective Date at the rate applicable under Bankruptcy Code section 511 or, if no such specific rate is established in conjunction with the Confirmation Hearing, the Prime Rate in effect on the Effective Date, payable in equal quarterly installments beginning on the last day of the first full calendar quarter following the Effective Date, due no later than the fifth (5th) anniversary of the Petition Date, or (iv) will be paid on such alternate terms as Reorganized Mahalo and the holder of such Claim otherwise agree.

### C. Classification and Treatment of Classified Claims and Interests.

### 1. Class 1 (O&G Royalty Trust Claims).

Class 1 comprises all O&G Royalty Trust Claims listed on the O&G Royalty Claims Exhibit. Class 1 is unimpaired under the Plan and the holders of Class 1 Claims are not entitled to vote to accept or reject the Plan. In the event the Court enters the O&G Lease Assumption Order, the terms of such order, unless such order provides otherwise, shall govern the terms of payment of the O&G Royalty Trust Claims, in lieu of the provisions that follow.

The Plan will not alter the legal, equitable, and contractual rights of holders of O&G Royalty Trust Claims. The "Claim Amount" indicated on the O&G Royalty Claims Exhibit shall be deemed the Allowed amount of all Claims held by the creditor listed in respect of such amount on such Exhibit and the amount to which such holder is entitled under the Plan. Unless the holder of the Allowed Class 1 Claim agrees to

other treatment, on the Distribution Date Reorganized Mahalo shall pay to such holder cash equal to the Claim Amount specified for each such holder on the O&G Royalty Trust Claims Exhibit.

To the extent the holder of an O&G Royalty Trust Claim also asserts a Lien against one or more oil and gas wells, oil and gas leases, oil and gas interests, and/or the proceeds thereof, including Liens asserted under 52 Okla. Stat. §548.2, Article 9 of the Uniform Commercial Code, or other applicable law, for the same amounts owing on account of such O&G Royalty Trust Claim, the treatment provided under the Plan on an account of O&G Royalty Trust Claim shall satisfy and extinguish any such Lien.

### 2. Class 2 (Secured Claims of Wells Fargo Foothill).

Class 2 comprises the Secured Claims of Wells Fargo Foothill. Class 2 is Impaired under the Plan and the holders of Class 2 Claims are entitled to vote to accept or reject the Plan. On the Effective Date, the Secured Claim in favor of Wells Fargo Foothill shall be deemed Allowed in the amount of approximately $37.5 million (collectively, the "Wells Fargo Foothill Restructured Debt Amount"), which amount shall include Claims for principal, interest, fees and expenses incurred prior to the Petition Date under the Prepetition Credit Agreement, all post-Petition Date interest, attorney's fees and expenses incurred thereunder through the Effective Date, and a restructuring fee in respect of the Wells Fargo Foothill Restated Credit Agreement in the amount of $500,000.[1]  This Secured Claim shall be satisfied pursuant to the terms of the Wells Fargo Foothill Restated Credit Agreement, which agreement shall have the following material terms:

**Principal Face Amount of Debt:** the Wells Fargo Foothill Restructured Debt Amount.

**Type of Loan**: Term loan.

**Security**: The Wells Fargo Foothill Restructured Debt Amount shall continue to be secured by a Lien on all or substantially all presently existing and hereafter arising property of the Debtor and Reorganized Mahalo. Wells Fargo Foothill's Lien on such Collateral of the Debtor and Reorganized Mahalo shall be senior to all other Liens, subject only to (a) Liens that are adjudicated pursuant to a Final Order to be senior to the Liens in favor of the Secured Lenders and constitute Allowed Secured Claims, and (b) any such other liens as Wells Fargo Foothill may permit pursuant to the Wells Fargo Foothill Restated Credit Agreement.

**Maturity Date**: Third (3rd) anniversary of Effective Date.

**Term Loan Amortization**: Equal monthly installments of principal in the amount of $100,000 per month, beginning on the first day of the 19th full calendar month following the month in which the Effective Date occurs. The balance shall be due and payable on the Maturity Date.

**Interest Rate:** The principal under the Wells Fargo Foothill Restated Credit Agreement shall bear interest at the rate per annum equal to LIBOR plus 6%, of which

---

[1]  The amount set forth here is an approximate amount. The actual amount shall be determined based upon the actual  post-petition fees and expenses incurred by Wells Fargo Foothill following the Petition Date through the Effective Date.

LIBOR plus 4% shall be payable on a cash basis and 2% shall be payable on a payment-in-kind basis ("Wells Fargo Foothill PIK Interest"). LIBOR shall be adjusted quarterly, but shall be subject to a floor of 3%. The Wells Fargo Foothill PIK Interest shall be paid-in-kind by adding such accrued Wells Fargo Foothill PIK Interest quarterly to the principal balance under the Wells Fargo Foothill Restated Credit Agreement.

**Financial Covenants:** Financial covenants shall include the following:

- "Borrowing Base" covenant, to be tested monthly, using the most recently completed semi-annual reserve report (and any supplemental report as provided above). The value of Proved Reserves shall be determined, as of the effective date of such report, on a PV-10 basis, using NYMEX 2-year strip pricing for oil and natural gas as of the effective date of such report, taking into account the price floors under Reorganized Debtor's outstanding hedge agreements. Borrowing Base to be calculated by applying the following percentages to the values for each of the following categories of Proved Reserves oil and natural gas assets: Proved Developed Producing (100%), Proved Developed Not Producing (100%), and Proved Undeveloped (78.5%). Reorganized Mahalo shall be in compliance with this covenant as long as the borrowing base is equal to or greater than the principal balance under the Wells Fargo Foothill Restated Credit Agreement.

- Asset coverage ratio to be tested following the completion of each semi-annual reserve report (and any supplemental report as provided above), but in no event sooner than six months following the Effective Date, not less than 1.2x with respect to any Borrowing Base redetermination prior to or on 06/30/10, and not less than 1.25x with respect to any Borrower Base redetermination after 06/30/10, calculated by dividing the Borrowing Base by the principal balance under the Wells Fargo Foothill Restated Credit Agreement.

- Capital expenditures shall not exceed 100% of the capital expenditure amounts set forth in the cash flow projections for Reorganized Mahalo in the approved Disclosure Statement, or such other budget as Wells Fargo Foothill and Ableco shall mutually agree.

- Minimum production shall meet or exceed 75% of the projected production set forth in the cash flow projections for Reorganized Mahalo in the approved Disclosure Statement, or such other budget as Wells Fargo Foothill and Ableco shall mutually agree. Minimum production shall be tested on a quarterly basis.

**Other Covenants:** Other affirmative and negative covenants shall be based on such affirmative and negative covenants as contained in the Prepetition Credit Agreement, modified to reflect the capital structure and post-Effective Date operations of Reorganized Mahalo, as Wells Fargo Foothill and Ableco shall mutually agree.

**Cash Dominion:** The cash of Reorganized Mahalo shall be maintained in one or more accounts subject to a blocked account control agreement in favor of Wells Fargo Foothill, in such form as Wells Fargo Foothill and Ableco shall mutually agree ("Blocked Account Control Agreement"). For purposes of perfecting their liens in such accounts, Ableco and the Exit Financing Lenders shall also be parties to the Blocked Account Control Agreement and hold control rights thereunder, subject to the control rights of Wells Fargo Foothill.

**Reserve Reports:** Wells Fargo Foothill shall receive an updated reserve report to be completed by Lee Keeling & Associates or another 3rd party engineering firm acceptable to Wells Fargo Foothill and Ableco. Following the Effective Date, Wells Fargo Foothill shall be entitled to semi-annual reserve update reports, and up to two additional update reports each year.

**Fees:** Wells Fargo Foothill shall be entitled to a closing fee of $500,000, which amount is included in the Wells Fargo Foothill Restructured Debt Amount, as set forth above. There shall be no unused line fee, no collateral management fee and no anniversary fee.

**Events of Default:** Events of Default in the Wells Fargo Foothill Restated Credit Agreement shall be based on such events of default as contained in the Prepetition Credit Agreement, modified to reflect the capital structure and post-Effective Date operations of Reorganized Mahalo. Events of Default shall include, among other things, default under the Restated Ableco Credit Agreement and the Exit Financing Agreement, defaults based on non-payment of principal and interest, breach of representations and warranties, failure to comply with affirmative or negative covenants, change of control, cessation of a substantial part of the business, the occurrence of an event that could result in a material adverse effect on the business.

**Governing Law:** Laws of the State of New York.

**Compromise:** Wells Fargo Foothill, as a Secured Lender, shall be deemed a Compromise Party for purposes of the provisions set forth in Section VI.B.

**Wells Fargo Foothill Restated Credit Agreement:** Reorganized Mahalo and Wells Fargo Foothill shall enter into the Wells Fargo Foothill Restated Credit Agreement, which shall be in a form acceptable to Wells Fargo Foothill and Ableco. The Wells Fargo Foothill Credit Agreement shall set forth terms of repayment of the Wells Fargo Foothill Restructured Debt Amount; the terms of repayment for other debts owing to other creditors of the Debtor shall be set forth in separate agreements. The Wells Fargo Foothill Credit Agreement shall be subject to an intercreditor agreement between and among Wells Fargo Foothill, Ableco, and the Exit Financing Lenders that shall be in a form acceptable to each of the parties (the "Intercreditor Agreement").

### 3. Class 3 (Claims of Ableco).

Class 3 comprises the Claims of Ableco in respect of the Ableco Debt: its Secured Claims, the Ableco General Unsecured Deficiency Claim, and the Ableco Adequate Protection Claim. Class 3 is Impaired under the Plan and the holders of Class 3 Claims are entitled to vote to accept or reject the Plan.[2]

Ableco's Secured Claim shall be deemed an Allowed Secured Claim under the Plan in the aggregate amount of $27.5 million.

(a) On the Effective Date, in consideration for $2 million of Ableco's Secured Claim and the Ableco Adequate Protection Claim, Ableco or its designee shall receive the New Common Stock, less any shares reserved for management and employees under the Employee Equity Incentive Plan).

(b) On the Effective Date, Allowed Secured Claims of Ableco in the amount of $25.5 million (the "Ableco Restructured Debt Amount") shall be satisfied pursuant to the terms of the Restated Ableco Credit Agreement, which agreement shall have the following material terms:

**Principal Face Amount of Debt:** $25.5 million

**Type of Loan:** Term loan.

**Securit**y: The Ableco Restructured Debt Amount shall continue to be secured by all or substantially all presently existing and hereafter arising property of the Debtor and Reorganized Mahalo. Ableco's Lien on such Collateral of the Debtor and Reorganized Mahalo shall be senior to all other Liens, subject only to (i) the Liens that are adjudicated pursuant to a Final Order to be senior to the Liens in favor of the Secured Lenders and constitute Allowed Secured Claims, (ii) the Liens in favor of Wells Fargo Foothill securing the debt under the Wells Fargo Foothill Restated Credit Agreement, and (iii) the Liens securing the obligations under the Exit Financing.

**Maturity Date**: Immediately after the maturity of the indebtedness owing to Wells Fargo Foothill under the Wells Fargo Foothill Restated Credit Agreement, provided that to the extent any Secured Claims are Allowed in favor of Williams or the holder of a Non-Compromised Lien/Trust Claim, the maturity date under the Restated Ableco Credit Agreement shall be the later of (i) immediately after the maturity of the indebtedness owing to Wells Fargo Foothill under the Wells Fargo Foothill Restated Credit Agreement and (ii) the payment in full of any such Allowed Secured Claim in favor of Williams or the holder of a Non-Compromised Lien/Trust Claim in accordance with the terms of the Plan.

**Term Loan Amortization:** The principal under the Restated Ableco Credit Agreement plus all accrued and unpaid interest thereon shall be due at maturity.

---

[2] To the extent required by the Bankruptcy Court, Class 3 shall be deemed to comprise separate sub-classes comprising, respectively, the Secured Claims and Unsecured Claims of Ableco, provided, that the collective treatment of such Claims in such sub-classes shall be the same as the treatment set forth herein under Class 3.

**Interest Rate**: The principal under the Restated Ableco Credit Agreement shall bear interest at the rate per annum equal to LIBOR plus 13%, adjusted quarterly, which shall be paid-in-kind (the "Ableco PIK Interest") by adding such accrued Ableco PIK Interest quarterly to the principal balance under Restated Ableco Credit Agreement; provided, however, that in the event that Reorganized Mahalo's senior leverage ratio is less than or equal to 3.00:1.00, an amount equal to the Ableco PIK Interest shall be payable in cash quarterly until such time as the senior leverage ratio exceeds more than 3.00:1.00.

**Financial Covenants:** Same as the Wells Fargo Foothill Restated Credit Agreement.

**Other Covenants:** Same as the Wells Fargo Foothill Restated Credit Agreement.

**Events of Default:** Same as the Wells Fargo Foothill Restated Credit Agreement. Events of Default shall include default under the Wells Fargo Foothill Restated Credit Agreement and the Exit Financing Agreement.

**Cash Dominion:** The cash of Reorganized Mahalo shall be maintained in one or more accounts subject to the Blocked Account Control Agreement. For purposes of perfecting its liens in such accounts, Ableco shall be a party to such Blocked Account Control Agreement, and hold control rights thereunder, subject to the control rights of Wells Fargo Foothill.

**Governing Law:** Laws of the State of New York.

**Compromise:** In consideration of the undertakings of Ableco under the Plan, on the Effective Date, Ableco shall be deemed a Compromise Party for purposes of the provisions set forth in Section VI.B.

**Restated Ableco Credit Agreement:** Reorganized Mahalo and Ableco shall enter into the Restated Ableco Credit Agreement, which shall be in a form acceptable to Ableco and Wells Fargo Foothill. The Restated Ableco Credit Agreement shall be subject to the Intercreditor Agreement.

The treatment set forth above shall be in full satisfaction of all of the Claims of Ableco against the Debtor and the property of the Estate. Ableco shall be deemed to agree to not receive a portion of the consideration otherwise available under the Plan to the holders of Allowed General Unsecured Claims on account of its Unsecured Deficiency Claim as against the Debtor and property of the Estate.

**4.     Class 4 (Claims Of Williams).**

The Williams Claims will be treated pursuant to the Stipulation Re Resolution Of Disputes Among Williams Production Mid-Continent Company And Williams Arkoma Gathering Company, LLC, Ableco Finance LLC, Wells Fargo Capital Finance, LLC, And The Debtor" [Docket No. 1086] ("Williams Stipulation"). The Williams Stipulation is attached hereto as Exhibit G and incorporated herein by this reference.

**5.     Class 5 (Compromised O&G Mechanics/Materialmen Claims).**

Class 5 comprises all Compromised O&G Mechanics/Materialmen Claims listed on the Compromised O&G Mechanics/Materialmen Claims Exhibit. Class 5 is Impaired under the Plan and the holders of Class 5 Claims are entitled to vote to accept or reject the Plan. Each Class 5 Claim shall be

deemed to be separately classified in a subclass of this Class 5 and shall have all rights associated with separate classification under the Bankruptcy Code.

Each holder of a Class 5 Claim shall receive the following treatment with respect to its Claim (the "Compromise O&G Mechanics/Materialmen Claim Treatment"):

The "Claim Amount" indicated on the Compromised Mechanics/Materialmen Claims Exhibit shall be the deemed Allowed amount of all Claims held by the creditor listed in respect of such amount on such Exhibit. On or before the Distribution Date, the holder of each Compromised O&G Mechanics/Materialmen Claim will receive the amount specified as the "Distribution Amount" for such creditor on the Compromised Mechanics/Materialmen Claims Exhibit (such amount constituting 7.5% of the Claim Amount listed thereon). Any asserted Lien or trust interest in respect of such a Compromised O&G Mechanics/Materialmen Claim shall be deemed released and expunged, including any Lien or trust interest asserted against Suspense Funds, upon remittance of the "Distribution Amount" to the holder of such Compromised O&G Mechanics/Materialmen Claim. (Any Suspense Funds subject to such Lien or interest shall be remitted and released to Reorganized Mahalo as set forth in Section V.C of the Plan). The "Distribution Amount" shall constitute the only amount to which the holder of a Compromised O&G Mechanics/Materialmen Claim is entitled under the Plan on account of all of its Claims.

Upon the Effective Date, each holder of a Compromised O&G Mechanics/Materialmen Claim shall be a Compromise Party for purposes of the provisions set forth in Section VI.B, and each such holder agrees that in consideration for the undertakings of Ableco and Wells Fargo Foothill under the Plan, including the funding of amounts necessary to make payments hereunder, each such holder shall not assert, and shall waive and release, any Rights of Action held by such holder against Ableco, Wells Fargo Foothill or their respective Related Compromise Parties.

The holder of a Claim listed on the Compromised O&G Mechanics/Materialmen Claims Exhibit may opt-out of the treatment provided under Class 5 by making a written election to do so on its Ballot the ("Class 5 Opt-Out Election").

If the Class 5 Opt-Out Election is timely made, the Claim that is the subject of the Class 5 Opt-Out Election: (i) will be a Non-Compromised Lien/Trust Claim under Class 5, (ii) will not receive the Compromise O&G Mechanics/Materialmen Claim Treatment and (iii) will receive instead the treatment provided for Non-Compromised Lien/Trust Claims under Class 6.

In order to make the Class 5 Opt-Out Election a Ballot indicating such election must be timely returned to the Ballot Tabulator by the Ballot Deadline. The timely returned Ballot of any holder making the Class 5 Opt-Out Election will be tabulated as a Class 6 Ballot.

6.    **Class 6 (Non-Compromised Lien/Trust Claims).**

Class 6 comprises all Non-Compromised Lien/Trust Claims as to which the holder (the "Non-Compromised Lien/Trust Claimant") has timely Filed a proof of claim asserting a Secured Claim or Trust Claim. A Non-Compromised Lien/Trust Claim as to which the holder has not satisfied the foregoing condition shall be classified and treated for all purposes under the Plan as a General Unsecured Claim pursuant to Class 9.

Class 6 is Impaired under the Plan and the holders of Class 6 Claims are entitled to vote to accept or reject the Plan. Each Class 6 Claim shall be deemed to be separately classified in a subclass of this Class 6 and shall have all rights associated with separate classification under the Bankruptcy Code. No later than 30 days following the Effective Date, Reorganized Mahalo (if Mahalo has not done so before the Effective Date) shall commence one or more adversary proceedings (combined with objections to Claims) before the Bankruptcy Court against the Non-Compromised Lien/Trust Claimants:

        (a) seeking a determination that such holder's Non-Compromised Lien/Trust Claim is not an Allowed Secured Claim; and/or

        (b) seeking a determination that such holder's Non-Compromised Lien/Trust Claim is not an Allowed Trust Claim.

    <u>Allowed Secured Claim Treatment</u>. If the Bankruptcy Court determines that a Non-Compromised Lien/Trust Claimant holds an Allowed Secured Claim, then such Non-Compromised Lien/Trust Claimant shall (i) retain the Lien against the Collateral that secures such Allowed Secured Claim and (ii) receive a Lien against property of Reorganized Mahalo that shall additionally secure such Allowed Secured Claim and shall be senior to the Liens of the Secured Lenders (including with respect to any future advances and any successor or replacement lender to the Secured Lenders) ("Non-Compromised Lien/Trust Additional Lien"); provided, however, that such claimant's Lien, if any, on Suspense Funds securing such Allowed Secured Claim shall be deemed released on the Effective Date and the Non-Compromised Lien/Trust Additional Lien shall constitute the indubitable equivalent for such claimant's Lien on Suspense Funds. The Non-Compromised Lien/Trust Additional Lien and, where noted, any other Collateral securing a Non-Compromised Lien/Trust Claimant's Allowed Secured Claim, shall be subject to the following additional terms:

        (A) To the extent such Claim secures an Allowed Secured Claim, the Non-Compromised Lien/Trust Additional Lien shall be pari passu with the Liens of other Non-Compromised Lien/Trust Claim Claimants and Williams.

        (B) Reorganized Mahalo may grant Liens junior to the Non-Compromised Lien Trust Replacement Lien or any other Collateral securing the Allowed Secured Claim of a Non-Compromised Lien/Trust Claimant.

        (C) Reorganized Mahalo shall be entitled to make Permitted Dispositions (as such term is defined in the Wells Fargo Restated Credit Agreement) under the Wells Fargo Foothill Restated Credit Agreement and may, without the prior consent of the Non-Compromised Lien/Trust Additional Lien Claimant, dispose of any Collateral securing the Non-Compromised Lien/Trust Additional Lien free and clear of such Lien so long as the remaining Collateral securing such Non-Compromised Lien/Trust Additional Lien shall have a value, as determined in the most recently completed semi-annual reserve report (and any supplemental report obtained thereafter), exceeding the remaining amount owing on account of such Non-Compromised Lien/Trust Claim by a ratio of no less than 5:1. Within forty-five (45) days following the completion of each fiscal quarter, Reorganized Mahalo shall furnish each Non-Compromised Lien/Trust Additional Lien claimant a written quarterly certificate setting forth Reorganized Mahalo's compliance with this provision for the preceding fiscal quarter and shall reasonably furnish information regarding compliance upon reasonable request.

(D)  Each Non-Compromised Lien/Trust Claimant shall provide Reorganized Mahalo with written notice of any default by Reorganized Mahalo hereunder, and Wells Fargo Foothill, Ableco and Reorganized Mahalo shall have three business days to cure such default following such written notice.  Such Non-Compromised Lien/Trust Claimant shall simultaneously provide Wells Fargo Foothill and Ableco with cop(ies) of any such default notice(s)

Reorganized Mahalo will satisfy each such Allowed Secured Claim as follows, at the option of Reorganized Mahalo, to be specified in a written notice Filed within seven (7) days following the Allowance Date of such Allowed Secured Claim (in either instance the following treatment shall be in full and complete satisfaction of such Allowed Secured Claim):

(A)  Reorganized Mahalo will satisfy the amount of such Allowed Secured Claim in full over a period (the "Class 6 Deferred Payment Period") following the Allowance Date plus simple interest accruing from the Effective Date on the outstanding balance at the per annum rate of LIBOR plus 3%, with principal amortized equally over the Class 6 Deferred Payment Period.  Interest and principal shall be paid quarterly, commencing with the first business day of the first full calendar quarter that begins after such Allowance Date.  Interest will be adjusted quarterly starting retroactively with the first full calendar quarter following the Petition Date.  The Class 6 Deferred Payment Period shall depend upon the aggregate amount of all Allowed Secured Claims in Class 6, pursuant to the following table:

| Aggregate Amount of Allowed Secured Claims in Class 6 | Class 6 Deferred Payment Period |
|---|---|
| $1,000,000 or less | 4 years |
| $1,000,001 to $1,250,000 | 5 years |
| $1,250,001 to $1,500,000 | 6 years |
| $1,500,0001 or more | 7 years |

or

(B)  Promptly following the Allowance Date, Reorganized Mahalo, with the prior written consent of Wells Fargo Foothill and Ableco, will transfer without representation or warranty express or implied to the holder of such Allowed Secured Claim the Collateral securing such Allowed Secured Claim.

Allowed Trust Claim Treatment.  To the extent pursuant to any such adversary proceeding such Non-Compromised Lien/Trust Claim is an Allowed Trust Claim, the amount of such Allowed Trust Claim shall be paid in full no later than fifteen (15) days after the Allowance Date .

In no event shall any holder of a Non-Compromised Lien/Trust Claim recover more than once on the same Claim.  If and only to the extent the Court determines that the same Claim is both an Allowed Secured Claim and an Allowed Trust Claim, the holder of such claim shall be permitted to elect between the foregoing treatments with respect to such claim.

Treatment Of Allowed Unsecured Claims. To the extent the Court determines that a Non-Compromised Lien/Trust Claim constitutes a valid obligation of the Debtor, but that such Claim is not an Allowed Secured Claim or Allowed Trust Claim that is recoverable from any interest in property, such Claim (to the extent an Allowed Claim) will be treated as a General Unsecured Claim under Class 9 and any asserted Lien shall be deemed released and expunged.

Effect of Election under Bankruptcy Code section 1111(b)(2). Notwithstanding the foregoing, if (a) the holder of a Non-Compromise Lien/Trust Claimant timely makes the election provided under Bankruptcy Code section 1111(b)(2), (b) as to the collateral securing the Claim that is the subject of such election, the Bankruptcy Court determines that the value of such holder's interest in such collateral is less than the full amount of such Allowed Claim but is not of an inconsequential value within the meaning of Bankruptcy Code section 1111(b)(1)(B)(i), and (c) the Reorganized Debtor does not elect, with the prior written consent of Wells Fargo Foothill and Ableco, to transfer the collateral securing such Claim to such holder, which transfer shall be in full satisfaction of such Claim, then such holder shall receive deferred payments equal to the Allowed Claim secured by such property over a period not to exceed 10 years from the Effective Date pursuant to a payment schedule to be furnished by the Reorganized Debtor promptly following the Allowance Date, but such payments shall have a present value as of the Effective Date of the Plan equal to the value of such creditor's interest in such property. The present value of such deferred payments shall be based upon a discount rate applied to such deferred payments as determined by the Bankruptcy Court following the determinations set forth above. In such event, the Claim that is subject to such election shall not be treated as a General Unsecured Claim under Class 9. If the Bankruptcy Court determines that the value of such holder's interest in is of an inconsequential value within the meaning of Bankruptcy Code section 1111(b)(1)(B)(i), then any election by such holder under Bankruptcy Code section 1111(b)(2) shall be null and void.

Penn Virginia Claims. The Claims of Penn Virginia MC Energy, LLC, Penn Virginia MC Operating Company, LLC, and Penn Virginia Oil & Gas Corporation, which are Class 6 Claims, will be treated pursuant to the "Stipulation Regarding Resolution Of Disputes Among Penn Virginia Mc Operating Company, LLC, Penn Virginia Mc Energy, LLC, And Penn Virginia Oil & Gas Corporation, Ableco Finance LLC, Wells Fargo Capital Finance, LLC, And The Debtor" [Docket No. 1084] ("Penn Virginia Stipulation"). The Penn Virginia Stipulation is attached hereto as Exhibit H and incorporated herein by this reference.

### 7. Class 7 (Secured Tax Claims).

Class 7 comprises all Secured Tax Claims. Class 7 is Impaired under the Plan and the holders of Class 7 Claims are entitled to vote to accept or reject the Plan. At the election of Reorganized Mahalo, unless Reorganized Mahalo and the holder of such Claim agree otherwise, each Allowed Secured Tax Claim (i) will be reinstated and paid on the date that such Allowed Secured Tax Claim first becomes due and payable in accordance with its terms, (ii) will be paid cash in the allowed amount of such Allowed Secured Tax Claim on the Distribution Date, or (iii) will be satisfied with a promissory note equal to the allowed amount of such Allowed Priority Tax Claim, bearing interest accruing from the Effective Date at the rate applicable under Bankruptcy Code section 511 or, if no such specific rate is established in conjunction with the Confirmation Hearing, at the Prime Rate in effect on the Effective Date, payable in equal quarterly installments beginning on the last day of the first full calendar quarter following the Effective Date, due no later than the fifth (5th) anniversary of the Petition Date.

Allowed Secured Tax Claims shall continue to be secured by the existing Collateral securing such Claims, until such Claims are paid in full

### 8. Class 8 (Priority Claims).

Class 8 comprises all Priority Claims. Class 8 is Impaired under the Plan and the holders of Class 8 Claims are entitled to vote to accept or reject the Plan. At the election of Reorganized Mahalo, unless Reorganized Mahalo and the holder of such Claim agree otherwise, each Allowed Priority Claim (i) will be reinstated and paid on the date that such Allowed Priority Claim first becomes due and payable in accordance with its terms, (ii) will be paid cash in the allowed amount of such Allowed Priority Claim on the Distribution Date, or (iii) will be satisfied with a promissory note equal to the allowed amount of such Allowed Priority Claim, bearing interest accruing from the Effective Date at the Prime Rate in effect on the Effective Date, payable in equal quarterly installments beginning on the last day of the first full calendar quarter following the Effective Date, due no later than the fifth (5th) anniversary of the Petition Date.

### 9. Class 9 (General Unsecured Claims, other than Small Claims).

Class 9 comprises all General Unsecured Claims, other than Small Claims, including Claims for goods and services provided to the Debtor and claims for payment on account of working interests in oil or gas wells operated by the Debtor. Class 9 is Impaired under the Plan and the holders of Class 9 Claims are entitled to vote to accept or reject the Plan.

On the Effective Date, in full and complete satisfaction of their Claims, the holders of Allowed General Unsecured Claims shall receive a pro rata interest in the net proceeds of the Liquidating Trust (calculated after deduction for the professional fees and expenses and the other costs of the Liquidating Trust). To the extent a General Unsecured Claim is allowed in favor of Parent, and either Wells Fargo Foothill or Ableco would be entitled to a distribution thereon in respect of their liens against the assets of Parent, any such distribution will instead be remitted to and for the benefit of the holders of Allowed General Unsecured Claims under Class 9 other than Parent. Wells Fargo Foothill and Ableco shall otherwise reserve all rights with respect to Parent.

As set forth in Section V.D, as of the Effective Date of the Plan, the Liquidating Trust will be vested with the Designated Avoidance Actions. Additionally, on the Effective Date, Reorganized Mahalo will (i) remit to the Liquidating Trust the sum of $50,000, and (ii) will quitclaim to the Liquidating Trust, pursuant to the Plan, the Specified Assets, free and clear of any Liens, claims and encumbrances of the Secured Lenders; the Liquidating Trust shall be entitled to retain any and all net proceeds from the development or sale of such interests.

Notwithstanding any of the foregoing, if for any reason a Specified Asset is not severable from an asset that does not constitute a Specified Asset, and/or is not transferable to the Liquidating Trust, title shall remain with Reorganized Mahalo but the Liquidating Trust shall have the right to develop and profit from such Specified Asset, provided that the Liquidating Trust bears all costs and liabilities associated therewith and indemnifies Reorganized Mahalo with respect thereto; and provided further that neither Reorganized Mahalo nor any of its other assets that do not constitute Specified Assets shall be liable for any costs or liabilities incurred by the Liquidating Trust.

Subject to the Plan, the Liquidating Trustee shall (i) prosecute, compromise, settle and/or abandon the Designated Avoidance Actions, in its reasonable discretion, for the benefit of the holders of Allowed

General Unsecured Claims, (ii) object to General Unsecured Claims, it its reasonable discretion, (iii) liquidate the proceeds of the Liquidating Trust, and (iv) distribute the net proceeds of the Liquidating Trust to the holders of Allowed General Unsecured Claims, periodically, as determined by the Liquidating Trustee or otherwise set forth in the Liquidating Trust Agreement. All expenses incurred by or on behalf of the Liquidating Trust shall be borne by the Liquidating Trust.

The Liquidating Trust shall succeed to all attorney/client privileges that exist or may be asserted on behalf of the Estate with respect to the Designated Avoidance Actions. All Designated Avoidance Actions have been fully preserved, and the Liquidating Trust shall not be estopped from pursuing such actions. By virtue of the notice of the Modification, the parties identified as potential defendants in clause (ii) of the definition of "Designated Avoidance Actions" shall be deemed to have received adequate notice of the potential claims against them.

Notwithstanding anything to the contrary contained in the Plan, (a) if any Designated Avoidance Action is commenced, asserted, continued or pursued by the Liquidating Trust against any person or entity (such person or entity collectively, "Designated Party") and as a direct or indirect result the Liquidating Trust obtains a recovery (whether by judgment, settlement or otherwise) (collectively, "Recovery") on account of such Designated Avoidance Action and such Designated Party or its subrogee obtains a judgment against the Secured Lenders for indemnification, contribution or reimbursement for all or a portion of the amount of such Recovery, then the Liquidating Trust shall pay over from the Recovery to such Secured Lenders an amount equal to the amount to which the Secured Lenders are required to pay to such Designated Party on account of such judgment for indemnification, contribution or reimbursement; (b) if the Liquidating Trust obtains a Recovery and a Designated Party or its subrogee asserts a right of indemnification, contribution or reimbursement against the Secured Lenders, then the Liquidating Trust shall not distribute to holders of Class 9 Allowed Claims the amount set forth in such demand until and unless such right of indemnification, contribution or indemnification has been waived in writing by the Designated Party or its subrogee, or has been denied by a court of competent jurisdiction pursuant to a Final Order; (c) if the Liquidating Trust obtains a judgment against a Designated Party and, as part of such adjudication, such Designated Party obtains a judgment against the Secured Lenders for indemnification, contribution or reimbursement for all or a portion of the amount of judgment, then the amount of the judgment obtained by the Liquidating Trust against the Designated Party shall be reduced by the amount of any such judgment the Designated Party has obtained for indemnification, contribution or reimbursement against the Secured Lenders; (d) the Secured Lenders that are the subject of any action by a Designated Party seeking to obtain a judgment for indemnification, contribution or reimbursement shall diligently defend such action in good faith at such Secured Lender's own expense. Nothing herein constitutes an acknowledgement by the Secured Lenders, in any fashion, that a Designated Party has any right to assert indemnity, contribution or reimbursement claims against any Secured Lender; the Secured Lenders dispute the existence and validity of any such claims for indemnity, contribution or reimbursement. For purposes of this subparagraph, "Secured Lenders" shall mean the Secured Lenders and each of them, and shall include all affiliates, agents, successors and assigns of any Secured Lender.

By way of clarification with respect to the holders classified as Class 9 General Unsecured Claims, any Claim of any current or former officer and director of the Debtor or Parent for indemnity, contribution, reimbursement or otherwise, including any Claim arising out of or relating to the Liquidating Trust's prosecution of the D&O Actions shall, solely to the extent Allowed, be classified in Class 9. However, the Liquidating Trust may (i) seek to disallow any such Claim on the grounds of untimeliness or any other basis in law and (ii) request that the Court subordinate any such Claims (in which case such Claims shall be treated in Class 11 (Subordinated Claims) under the Plan).

If the Liquidating Trust pays all Class 9 Allowed Claims in full plus twenty-five percent (25%), then if consented to by the Reorganized Debtor in its sole discretion, any property (including cash) remaining in the Liquidating Trust after payment in full of all costs and expenses (including professional fees and expenses) shall be transferred to the Reorganized Debtor for its own use and retention, provided, however, that this subparagraph shall be void and of no effect if its inclusion results in the loss or reduction of any coverage provided under any applicable directors' and officers' liability insurance coverage.

### 10.     Class 10 (Small Claims).

Class 10 comprises all Small Claims. Class 10 is Impaired under the Plan and the holders of Class 10 Claims are entitled to vote to accept or reject the Plan. On the Distribution Date, in full and complete satisfaction of their Claims, Reorganized Mahalo will remit to the holders of Allowed Small Claims cash equal to 30% of such holder's Allowed Class 10 Claim.

### 11.     Class 11 (Subordinated Claims).

Class 11 comprises all Subordinated Claims. Class 11 is Impaired under the Plan and deemed to reject the Plan. In the event the holders of Allowed General Unsecured Claims have been paid the full amount of such Allowed Claims plus interest thereon, as determined by the Court, the holders of any Allowed Subordinated Claims shall receive payment of their claims to the extent there are any available funds in the Liquidating Trust. Any Claim that is classified as of the Effective Date as a non-subordinated Claim under any Class other than Class 11, but that subsequently becomes a Subordinated Claim, shall be deemed reclassified as a Class 11 Claim as of the Effective Date.

### 12.     Class 12 (Interests).

Class 12 comprises all Interests. Class 12 is Impaired under the Plan and deemed to reject the Plan. The holders of Interests in the Debtor will neither receive nor retain property under the Plan on account of such Interests.

### III.

### OPPORTUNITY TO PARTICIPATE IN O&G DRILLING VENDOR PROGRAM

Each holder of a Claim that accepts the Plan may elect on its Ballot, in lieu of the treatment provided under the Plan for such holder's Claims under the Class(es) in which they are classified, to participate in and undertake the obligations required to participate in the O&G Drilling Vendor Program, which is described on the O&G Drilling Vendor Program Summary attached hereto as Exhibit D (the "O&G Drilling Vendor Election"). Each holder of a Claim that makes the O&G Drilling Vendor Election agrees that in consideration for the undertakings of the Secured Lenders under the Plan, including the funding of amounts necessary to make payments under the Plan, that it shall not assert any Rights of Action against the Secured Lenders or a Related Compromise Party, and that it shall accept the amounts it receives under the program in full satisfaction of its Claims against the Debtor

If such holder of a Claim timely makes the O&G Drilling Vendor Election, the provisions of the O&G Drilling Vendor Program Summary shall constitute the sole satisfaction of such holder's Claim and such holder shall waive any other right to obtain recovery on account of such holder's Claim (and any Lien or trust claim on account of such Claim shall be null and void); provided, however, that the effectiveness of the O&G Drilling Vendor Program shall be conditioned on sufficient participation by O&G Drilling

Vendors that is acceptable to Reorganized Mahalo, which determination shall be made by Reorganized Mahalo and communicated to holders that made the O&G Drilling Vendor Election on or before the Distribution Date. In addition, the right of such holder to participate in the O&G Drilling Vendor Election shall be conditioned on Reorganized Mahalo's determination that such holder renders goods or services that are likely to be utilized in the O&G Drilling Vendor Program, which determination shall be made by Reorganized Mahalo and communicated to holders that made the O&G Drilling Vendor Election on or before the Distribution Date.

If Reorganized Mahalo determines that there is insufficient participation in O&G Drilling Vendor Program such that the program will not become effective, then all O&G Drilling Vendor Elections shall be null and void and such holders shall receive the treatment otherwise applicable to such Claims under the Plan. In addition, if as to any individual holder making the O&G Drilling Vendor Election, Reorganized Mahalo determines that such holder renders goods or services that are likely to be utilized in the O&G Drilling Vendor Program, then such holder's O&G Drilling Vendor Election shall be null and void and such holders shall receive the treatment otherwise applicable to such Claim under the Plan.

Pursuant to the O&G Drilling Vendor Program, participants financing goods and services in respect of a new well to be drilled thereunder will share in a Lien, on a *pari passu* basis, on Reorganized Mahalo's working interest in such new well, to secure Reorganized Mahalo's obligations under the program. Notwithstanding anything to the contrary contained in the Plan, each such Lien will be senior to (i) the Liens of the Secured Lenders, (ii) the Liens granted to secure the Exit Financing, and (iii) the replacement Liens granted hereunder in respect of Suspense Funds under Sections II.C.4, II.C.5, and II.C.6.


# IV.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A. Rejection of Executory Contracts and Unexpired Leases.

#### 1. Rejected Contracts and Leases.

On the Effective Date, all executory contracts and unexpired leases of the Debtor will be rejected, including the contracts and leases listed on the Schedule of Contracts and Leases to be Rejected, provided, however, that the following contracts and leases shall not be rejected as of the Effective Date: (i) the contracts and leases listed on the Schedule of Assumed Contracts and Leases, (ii) contracts and leases already rejected or assumed by prior order of the Court, (iii) Confidentiality Agreements, and (iv) such other contracts and leases as to which the Plan or the Confirmation Order provide otherwise.

The Debtor reserves the right to amend the Schedule of Rejected Contracts and Leases at any time before the conclusion of the Confirmation Hearing to (1) delete any executory contract or unexpired lease and provide for its assumption under the Plan or otherwise, or (b) add any executory contract or unexpired lease and provide for its express rejection. The Debtor will provide notice of any amendment to the Schedule of Rejected Contracts and Leases to the party or parties to the agreement affected thereby.

The Confirmation Order shall constitute an order approving such rejection as of the Effective Date.

### 2. Bar Date for Rejection Damage Claims.

Any Rejection Damage Claim or other General Unsecured Claim for damages arising from the rejection under the Plan of an executory contract or unexpired lease must be Filed and served on both Reorganized Mahalo and the Liquidating Trustee within thirty (30) days after the mailing of notice of the occurrence of the Effective Date (nothing herein shall extend the deadline for the filing of claims with respect to contracts or leases previously rejected). Any such Claim that is not timely Filed and served will be entitled to no distribution under the Plan on account of such Claim and will be unenforceable against the Debtor, the Estate, Reorganized Mahalo, the Liquidating Trust, and their respective property, and entities holding such Claims will be barred by the Confirmation Order from receiving any distributions under the Plan on account of such untimely Claims.

### B. Assumption of Executory Contracts and Unexpired Leases.

### 1. Assumed Contracts and Leases.

On the Effective Date, the executory contracts and unexpired leases listed on the Schedule of Assumed Contracts and Leases will be assumed, unless any of such contracts or leases previously was assumed or rejected by Final Order under Bankruptcy Code section 365.

The Debtor reserves the right to amend the Schedule of Assumed Contracts and Leases at any time before the conclusion of the Confirmation hearing to (1) delete any executory contract or unexpired lease an provide for its rejection under the Plan or otherwise, or (b) add any executory contract or unexpired lease and provide for its assumption, or assumption and assignment. The Debtor will provide notice of any amendment to the Schedule of Assumed Contracts and Leases to the party or parties to the agreement affected thereby.

The Confirmation Order will constitute a Court order approving the assumption, on the Effective Date, of the executory contracts and unexpired leases then identified on the Schedule of Assumed Contracts and Leases. The Debtor's oil, gas and mineral leases that are listed on the Schedule of Assumed Contracts and Leases do not constitute unexpired leases of non-residential real property or executory contracts for purposes of Bankruptcy Code section 365 and will not be treated as such under the Plan, unless the Court enters the O&G Lease Assumption Order.

### 2. Cure Payments.

The Schedule of Assumed Contracts and Leases also identifies any amounts that the Debtor believes Bankruptcy Code sections 365(b)(1)(A) or (B) require be paid in order to cure defaults under the executory contracts and unexpired leases to be assumed under the Plan. The Debtor reserves the right to amend the Schedule of Assumed Contracts and Leases, including modifying the proposed Cure Payments, up to the conclusion of the Confirmation Hearing.

As required by Bankruptcy Code section 365(b)(1), any and all monetary defaults under each executory contract and unexpired lease to be assumed under this Plan will be satisfied in one of the following two ways: (a) Reorganized Mahalo will pay to the non-debtor party to the executory contract or unexpired lease the Cure Payments set forth on the Schedule of Assumed Contracts and Leases, in cash on or before the Distribution Date; or (b) Reorganized Mahalo will satisfy any other terms that are agreed to by both the Debtor and the non-debtor party to an executory contract or unexpired lease that will be assumed.

If, however, a dispute arises regarding: (a) the amount of any proposed Cure Payments; (b) whether there is adequate assurance of future performance under an executory contract or unexpired lease to be assumed, to the extent required under the Bankruptcy Code; or (c) any other matter pertaining to a proposed assumption, the proposed Cure Payments will be made within 15 days after entry of a Final Order resolving the dispute and approving the assumption.

### 3. Objections to Assumption Or Proposed Cure Payment.

Any person or entity that is a party to an executory contract or unexpired lease that will be assumed under the Plan and that either contends that the proposed Cure Payment specified on the Schedule of Assumed Contracts and Leases is incorrect or otherwise objects to the contemplated assumption must File with the Court and serve upon the Debtor, the Debtor's Counsel, counsel to the Creditors' Committee and counsel to the Secured Lenders a written statement and supporting declaration stating the basis for its objection. This statement and declaration must be Filed and served by the later of: (a) ten (10) days before the Confirmation Hearing; or (b) five (5) days after the Debtor Files and Serves the Schedule of Assumed Contracts and Leases, or any amendments to the Schedule of Contracts and Leases (only with respect to an executory contract or unexpired lease added to the Schedule of Assumed Agreements by such an amendment, or with respect to any proposed Cure Payment that is reduced by such an amendment). Any entity that fails to timely File and serve such a statement and declaration will be deemed to waive any and all objections to the proposed assumption and the proposed Cure Payments.

### 4. Resolution of Claims Relating to Assumed Contracts and Leases.

In accordance with the procedures set forth in Section IV.B.2 relating to Cure Payments, payment of the Cure Payments with respect to executory contracts or unexpired leases that will be assumed under the Plan shall be deemed to satisfy, in full, any and all Claims arising therefrom, including any prepetition claim or Rejection Damage Claim asserted in a Filed proof of claim or listed in the Schedules, irrespective of whether the Cure Payment is less than the amount set forth in such proof of claim or the Schedules. Upon the tendering of the Cure Payment, such Claims shall be deemed satisfied, without further order of the Court or action by any party.

### V.

### MEANS OF EXECUTION AND IMPLEMENTATION OF THE PLAN

### A. Exit Financing.

On and contemporaneously with the Effective Date, Ableco or an Affiliate designated by Ableco will furnish the Exit Financing, which will permit Reorganized Mahalo to continue its operations on and after the Effective Date and satisfy certain Plan obligations on the Effective Date. The Exit Financing will have the following material terms:

**Principal Face Amount of Debt:** Up to $5,000,000.

**Type of Loan:** Revolving facility.

**Maturity Date:** Immediately after the maturity of the indebtedness owing to Wells Fargo Foothill under the Wells Fargo Foothill Restated Credit Agreement, provided that to the extent any Secured Claims are Allowed in favor of Williams or a Non-Compromised Lien/Trust Claim, the maturity date shall be the later of (i) immediately after the maturity of the indebtedness owing to

Wells Fargo Foothill under the Wells Fargo Foothill Restated Credit Agreement and (ii) the payment in full of any such Allowed Secured Claim in accordance with the Plan.

**Interest Rate:** The Exit Financing shall bear interest at a per annum rate equal to LIBOR plus 10%, adjusted quarterly. Interest shall be paid monthly in cash.

**Security:** The indebtedness under the Exit Financing shall be secured by the same Collateral securing the obligations under the Wells Fargo Foothill Restated Credit Agreement and the Restated Ableco Credit Agreement and shall constitute a senior Lien against such property subject only to (a) Liens that are adjudicated pursuant to a Final Order to be senior to the Liens in favor of the Secured Lenders and constitute Allowed Secured Claims, (b) the Liens in favor of Wells Fargo Foothill securing the debt under the Wells Fargo Restated Debt Agreement, and (c) any such other liens as the Exit Financing Lenders may permit pursuant to the Exit Financing Agreement.

**Financial Covenants:** Financial covenants shall be consistent with the Wells Fargo Foothill Restated Credit Agreement and the Restated Ableco Credit Agreement.

**Other Covenants:** Affirmative and negative covenants shall be based on such affirmative and negative covenants contained in the Wells Fargo Foothill Restated Credit Agreement and the Restated Ableco Credit Agreement.

**Events of Default:** Events of Default shall be based on such events of default as contained in the Wells Fargo Foothill Restated Credit Agreement and the Restated Ableco Credit Agreement. Events of Default shall include default under the Wells Fargo Foothill Restated Credit Agreement and the Restated Ableco Credit Agreement.

**Cash Dominion:** The cash of Reorganized Mahalo shall be maintained in one or more accounts subject to the Blocked Account Control Agreement. For purposes of perfecting their liens in such accounts, the Exit Financing Lenders shall be parties to such Blocked Account Control Agreement, and hold control rights thereunder, subject to the control rights of Wells Fargo Foothill.

**Expense Reimbursement:** The Exit Financing Lenders shall be entitled, upon closing, to payment of costs and expenses in respect of the Exit Financing, including attorneys fees and costs.

**Governing Law:** Laws of the State of New York.

**Exit Financing Agreement:** Reorganized Mahalo and Ableco shall enter into the Exit Financing Agreement, which shall be in a form acceptable to Ableco. The Exit Financing Agreement shall be subject to the Intercreditor Agreement.

**B.     Funding of the Plan.**

All obligations of Reorganized Mahalo under the Plan will be paid or caused to be paid by Reorganized Mahalo from cash on hand in the Estate and the proceeds of the Exit Financing. The cash necessary for Reorganized Mahalo to make deferred cash payments provided for under the Plan will be derived from the post-Effective Date revenues of Reorganized Mahalo and advances under the Exit Financing.

All obligations of the Liquidating Trust to make disbursements to the holders of Allowed General Unsecured Claims shall be funded by the assets of the Liquidating Trust.

### C. Vesting of Assets Generally; Suspense Funds.

Except as otherwise provided in the Plan, or in the Wells Fargo Foothill Restated Credit Agreement, the Restated Ableco Credit Agreement and the Exit Financing Agreement, on the Effective Date, all property of the Estate shall vest in Reorganized Mahalo, free and clear of all claims, Liens, encumbrances and interests. From and after the Effective Date, Reorganized Mahalo may operate its business and use, acquire and dispose of property without supervision by the Court, and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan, the Confirmation Order, the Wells Fargo Foothill Restated Credit Agreement, the Restated Ableco Credit Agreement and the Exit Financing Agreement.

Without limiting the generality of the foregoing paragraph, on the Effective Date: all Suspense Funds remitted to the Debtor but held on deposit pursuant to an order of the Court or otherwise, and all rights to Suspense Funds to be remitted to the Debtor pursuant to an order of the Court or otherwise, shall be released to and vested in Reorganized Mahalo, free and clear of all claims, Liens, encumbrances and interests, in accordance with the applicable release provisions set forth in the Plan.

### D. Preservation/Vesting of Rights of Action.

Except as expressly released and otherwise provided pursuant to the Plan, pursuant to Bankruptcy Code section 1123(b), Reorganized Mahalo shall be vested on the Effective Date with and shall retain and may enforce any and all Rights of Action that the Debtor, the Estate and/or the Creditors' Committee may hold or have against any entity, including (i) the Williams Avoidance Actions, (ii) any legal or equitable rights to subordinate and/or disallow Claims (excluding General Unsecured Claims), (iii) any derivative Rights of Action that may be brought by the Debtor or the Creditors' Committee on behalf of the Debtor and/or Estate; and (iv) any and all other Rights of Action of any kind or nature of the Debtor or the Estate that may exist as a consequence of applicable bankruptcy law or nonbankruptcy law (collectively, the "Retained Actions"); provided, however the Retained Actions shall not include the Designated Avoidance Actions. Upon the Effective Date, Reorganized Mahalo and only Reorganized Mahalo shall have standing to assert the Retained Actions and may prosecute, abandon, settle or otherwise dispose of the Retained Actions in its discretion. Notwithstanding the foregoing, the Retained Actions shall not include any claim, right or cause of action released pursuant to the Plan.

Except as expressly released and otherwise provided pursuant to the Plan, pursuant to Bankruptcy Code section 1123(b), the Liquidating Trustee, on behalf of the Liquidating Trust and the holders of Allowed General Unsecured Claims shall be vested on the Effective Date with the Designated Avoidance Actions. Upon the Effective Date, the Liquidating Trustee and only the Liquidating Trustee shall have standing to assert the Designated Avoidance Actions and may prosecute, abandon, settle or otherwise dispose of the Designated Avoidance Actions in its discretion.

### E. The Liquidating Trust.

#### 1. Appointment of the Liquidating Trustee.

Pursuant to 11 U.S.C. § 1129(a)(5), consistent with the interests of creditors, and consistent with public policy, the Confirmation Order shall appoint, effective on the Effective Date, the Liquidating Trustee.

The Creditors' Committee will designate and disclose the identity of the Liquidating Trustee prior to the commencement of the Confirmation Hearing. If the Creditors' Committee refuses to do so, the Debtor will designate and disclose the identity of the Liquidating Trustee. The Liquidating Trustee shall consult with the Advisory Committee, but shall be free to act as s/he deems appropriate, in his/her discretion, to effectuate the terms of the Plan as to which s/he has obligations, and the Liquidating Trust Agreement.

The Liquidating Trustee shall serve for the duration of the Liquidating Trust, subject to earlier death, resignation, incapacity or removal as provided in the Liquidating Trust Agreement. If the initial Liquidating Trustee appointed pursuant to the Confirmation Order is not able to serve for the duration of the Liquidating Trust, a successor shall be chosen by the Advisory Committee, subject to Bankruptcy Court approval.

The Liquidating Trustee shall perform his/her duties under the Plan without bond. The Liquidating Trustee shall have no liability to any person or entity entitled to receive a distribution pursuant to the Plan for any losses, damages, claims or causes of action, other than those primarily resulting from the Liquidating Trustee's action or failure to act arising out of, in connection with or resulting from the Liquidating Trustee's gross negligence or willful misconduct. The Liquidating Trust shall indemnify, defend and hold the Liquidating Trustee and his/her agents and advisors harmless from and against any claims, damages, costs, fines, penalties, liabilities, attorneys' and other professional fees and disbursements, suffered, incurred by, or asserted against any such party in connection with the rendition of services to the Liquidating Trust, provided that such indemnification shall not apply to the extent any such claims, damages, costs, fines, penalties, liabilities, attorneys' and other professional fees and disbursements, resulted primarily from gross negligence or willful misconduct of the Liquidating Trustee or his/her agents or advisors, as the case may be, as determined by a Final Order. Any such indemnification claims shall be paid or caused to be paid prior and in preference to any other payments or distributions to be made from the Liquidating Trust.

## 2. Powers and Duties of the Liquidating Trustee.

Subject to the Plan, the Liquidating Trustee shall (i) prosecute, compromise, settle and/or abandon the Designated Avoidance Actions, in his/her reasonable discretion, for the benefit of the holders of Allowed General Unsecured Claims, (ii) object to General Unsecured Claims, in his/her reasonable discretion, for the benefit of the holders of Allowed General Unsecured Claims, (iii) manage and maintain an accounting of the Liquidating Trust, (iv) file all tax and regulatory forms, returns, reports and other documents required with respect to the Liquidating Trust; (v) distribute the net proceeds of the Liquidating Trust to the holders of Allowed General Unsecured Claims, and (vi) take all actions necessary and create any documents necessary to wind up the affairs of the Liquidating Trust. All expenses incurred by or on behalf of the Liquidating Trustee or the Liquidating Trust shall be borne by the Liquidating Trust.

## 3. Termination of the Liquidating Trust.

The Liquidating Trust shall terminate when the Liquidating Trustee has performed all of his/her duties with respect to the Liquidating Trust, including the final distribution of all the property of the Liquidating Trust, which date shall not be more than 36 months after the Effective Date; provided, however, that, upon a motion filed by a party in interest, including the Liquidating Trustee, upon a showing of cause, the Bankruptcy Court may extend the duration of the Liquidating Trust so long as shall be necessary to liquidate and distribute property of the Liquidating Trust, but in no event more than 60 months after the Effective Date.

### 4. Formation of the Advisory Committee.

On the Effective Date, the Advisory Committee shall be deemed established and shall be comprised of all former members of the Creditors' Committee as of the Effective Date who consent to serve on the Advisory Committee. The Advisory Committee shall be entitled to advise the Liquidating Trustee with respect to the liquidation and distribution of the assets of the Liquidating Trust in accordance with the Liquidating Trust Agreement, the Plan, and the Confirmation Order. The Creditors' Committee shall designate the members of the Advisory Committee by Filing a list of such members and serving it on counsel to the Debtor, counsel to Ableco, and the parties that have requested notice pursuant to Bankruptcy Rule 2002, no later than the Exhibit Filing Date. The Advisory Committee shall have no authority other than as expressly stated in this paragraph. The Advisory Committee will dissolve upon the termination of the Liquidating Trust.

### F. Claim Objections.

Except as provided in Section II.B.1 above (regarding allowance of Administrative Claims), objections to any Claims shall be Filed and served upon the holder of such Claim no later than the Claim Objection Deadline.

On and after the Effective Date, Reorganized Mahalo shall have exclusive authority to prosecute, compromise, abandon or otherwise dispose of any objection to a Claim, other than a General Unsecured Claim. On and after the Effective Date, the Liquidating Trustee shall have exclusive authority to prosecute, compromise, abandon or otherwise dispose of any objection to a General Unsecured Claim.

### G. Distribution of Property Under the Plan.

The following procedures set forth in the Plan apply to distributions made pursuant to the Plan by Reorganized Mahalo or the Liquidating Trustee, in each instance acting as a Disbursing Agent for purposes of this Section V.G.

Each Disbursing Agent will serve without bond and shall make the distributions it is required to make under the Plan, except where otherwise provided. To the extent required by applicable law, each Disbursing Agent in making cash distributions under the Plan shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Each Disbursing Agent may withhold the entire cash distribution due to any holder of an Allowed Claim until such time as such holder provides the necessary information to comply with any withholding requirements of any governmental unit.

### 1. Manner of Cash Payments Under the Plan.

Cash payments to domestic entities holding Allowed Claims will be tendered in United States dollars and will be made by checks drawn on a United States domestic bank or by wire transfer from a United States domestic bank. Any domestic entity holding an Allowed Claim that wishes to receive a cash payment by wire transfer shall provide wire instructions to the Disbursing Agent. In any such case, the Disbursing Agent shall make the cash payment(s) by wire transfer in accordance with the wire instructions, provided that the costs of such wire transfer shall be deducted from such entity's distribution. Payments made to foreign creditors holding Allowed Claims may be paid or caused to be paid, at the option of the Disbursing Agent, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

## 2. No *De Minimis* Distributions.

Notwithstanding anything to the contrary in this Plan, no cash payment of less than $25 will be made to any entity. No consideration will be provided in lieu of the *de minimis* distributions that are not made under this Section.

## 3. No Distribution with Respect to Disputed Claims.

No payments of cash or distributions of other property or other consideration of any kind shall be made on account of any Disputed Claim unless and until such Claim becomes an Allowed Claim or is deemed to be such for purposes of distribution, and then only to the extent that the Claim becomes, or is deemed to be for distribution purposes, an Allowed Claim. Unless otherwise provided in the Plan, any holder of a Claim that becomes an Allowed Claim after the Effective Date will receive any distribution that it would have received had its Allowed Claim been Allowed as of the Effective Date within fifteen (15) days from the date that such Claim becomes an Allowed Claim.

## 4. Delivery of Distributions and Undeliverable/Unclaimed Distributions.

### (a) Delivery of Distributions in General.

The Disbursing Agent shall make distributions to each holder of an Allowed Claim and Allowed Trust Claim by mail as follows: (a) at the address set forth on the proof of Claim filed by such holder of an Allowed Claim or Allowed Trust Claim; (b) at the address set forth in any written notice of address change delivered to the Disbursing Agent after the date of any related proof of Claim; and (c) at the address reflected in the Schedules if no proof of Claim is filed and the applicable Disbursing Agent has not received a written notice of a change of address. To the extent the Debtor or Reorganized Mahalo has no current address as to the holder of an Allowed Claim or Allowed Trust Claim, Reorganized Mahalo shall withhold the remittance of any distribution to such holder unless and until the applicable Disbursing Agent is notified in writing of such holder's then current address.

### (b) Undeliverable and Unclaimed Distributions.

If the distribution is remitted to the holder of any Allowed Claim or Allowed Trust Claim is returned as undeliverable, no further distribution shall be made to such holder unless and until the applicable Disbursing Agent is notified in writing of such holder's then current address. Subject to the other provisions of the Plan, undeliverable distributions shall remain in the possession of the Disbursing Agent making the distribution pursuant to this Section until such time as a distribution becomes deliverable. All undeliverable cash distributions will be held in unsegregated, interest-bearing bank accounts for the benefit of the persons or entities entitled to such distributions. These persons and entities will be entitled to any interest actually earned on account of the undeliverable distributions.

Any holder of an Allowed Claim or Allowed Trust Claim who does not assert a claim in writing for any undeliverable distribution within two (2) years after such distribution was first made shall no longer have any claim to or interest in such undeliverable distribution, and shall be forever barred from receiving any distributions under the Plan, or from asserting a Claim against the Debtor, the Estate, Reorganized Mahalo, the Liquidating Trust, or their respective property, and the Claim giving rise to the undeliverable distribution will be barred.

Any undeliverable distributions on Allowed Claims or Allowed Trust Claims that are not claimed under this Section will be retained by the Reorganized Debtor.

### (c) Estimation of Disputed Claims for Distribution Purposes.

Each Disbursing Agent may move for a Bankruptcy Court order estimating any Disputed Claim as to which such Disbursing Agent is responsible under the Plan. The estimated amount of any Disputed Claim so determined by the Bankruptcy Court shall constitute the maximum recovery that the holder thereof may recover under the Plan. In the event that the applicable Disbursing Agent does not seek an order estimating a Disputed Claim, the estimated amount of such Disputed Claim, for purposes of maintaining an appropriate reserve in connection with a distribution, shall be the amount set forth in the proof of claim evidencing the Disputed Claim (or in Debtor's schedules if no proof of claim has been filed), if any.

### H. Setoff, Recoupment and Other Rights.

Notwithstanding anything to the contrary contained in the Plan, Reorganized Mahalo may, but shall not be required to, setoff, recoup, assert counterclaims or withhold against the distributions to be made pursuant to this Plan on account of any Allowed Claim, any claims that the Debtor, the Estate, or Reorganized Mahalo may have against the entity holding the Allowed Claim; provided, however, that none of the failure to effect such a setoff or recoupment, the failure to assert counterclaims or withhold distributions, or the allowance of any Claim against the Debtor, the Estate or Reorganized Mahalo, or any partial or full payment during the Case or after the Effective Date in respect of any Allowed Claim, shall constitute a waiver or release by the Debtor, the Estate or Reorganized Mahalo of any claim that any of them may possess against such holder.

### I. Cancellation of Interests.

On the Effective Date, without any further action by any party, all Interests in the Debtor shall be cancelled, retired, annulled, and extinguished and of no further force or effect, including each share of Existing Stock issued and outstanding or any other stock held in treasury and no consideration will be paid or caused to be paid or delivered with respect thereto. Holders of such stock shall not be required to surrender such stock to Debtor.

### J. Reorganized Mahalo.

#### 1. Board of Reorganized Mahalo.

On the Effective Date, without further action by any party, the existing members of the board of directors for the Debtor shall be deemed removed as directors of the Debtor and replaced with the New Board Members. Following the Effective Date, the membership of the board of directors of Reorganized Mahalo will be determined in accordance with its Articles and Bylaws.

#### 2. Officers of Reorganized Mahalo.

As of the Effective Date, the officers of Reorganized Mahalo will serve at the discretion of the board of directors for Reorganized Mahalo.

### 3. Articles of Incorporation and Bylaws.

As of the Effective Date, the Articles of Incorporation and Bylaws shall (a) prohibit the issuance of non-voting equities securities as required by Bankruptcy Code section 1123(a)(6), subject to amendment of such Articles of Incorporation and Bylaws as permitted by applicable law, and (b) effectuate the provisions of the Plan, including the cancellation of all Interests and the issuance of New Common Stock, in each case without any further action by the shareholders or directors of the Debtor or Reorganized Mahalo.

### 4. Terms of the New Common Stock.

Each share of New Common Stock shall entitle the holder thereof to one vote in all matters to be voted on by the shareholders of Reorganized Mahalo. Subject to preferences that may be applicable to any preferred stock that may be issued and outstanding at the time, holders of New Common Stock will be entitled to receive ratably such dividends, if any, as may be declared from time to time by Reorganized Mahalo's board of directors out of funds legally available for that purpose; provided, however, that no such dividends shall be paid until the amounts due under the Wells Fargo Foothill Restated Credit Agreement have been indefeasibly paid in full in cash. In the event that Reorganized Mahalo liquidates, dissolves or winds up, holders of New Common Stock will be entitled to share ratably in all assets remaining after payment of liabilities and the liquidation preferences of preferred stock, if any, outstanding at the time. The rights, preferences and privileges of holders of New Common Stock are subject to, and may be materially adversely affected by, the rights of the holders of any shares of preferred stock that the board of directors of Reorganized Mahalo may designate and issue in the future. Any additional rights, preferences and restrictions associated with New Common Stock shall be determined by the board of directors and shall be set forth in the Articles of Incorporation and Bylaws of Reorganized Mahalo.

### 5. Securities Exemption.

The exemption from the requirements of Section 5 of the Securities Act of 1933, 15 U.S.C. § 77e, and any state or local law requiring registration or qualification for the offer or sale of a security provided under Bankruptcy Code section 1145 shall apply to the New Common Stock issued and distributed under the Plan.

### 6. Employee Equity Incentive Plan.

The Debtor expects that promptly following the Effective Date, the board of Reorganized Mahalo will adopt an employee equity incentive plan ("Employee Equity Incentive Plan") pursuant to which a number of shares of New Common Stock of up to 10% of the outstanding New Common Stock on the Effective Date will be available for issuance pursuant to the Employee Equity Incentive Plan.

### 7. Employee Benefit Plans.

The Reorganized Debtor will establish new employee benefit plans, programs and benefits (other than those pertaining to rights to acquire or receive Interests in the Debtor) containing substantially the same terms as those existing immediately prior to the Effective Date as to persons employed on the Effective Date and retained by Reorganized Mahalo.

### K. Dissolution of the Creditors' Committee.

On the Effective Date, the Creditors' Committee shall be dissolved and released and discharged from the rights and duties arising from or related to the Case, except with respect to final applications for

professional compensation. The professionals retained by the Creditors' Committee and the members thereof shall not be entitled to compensation or reimbursement of expenses for any services rendered or expenses incurred after the Effective Date, except for services rendered and expenses incurred in connection with any applications by such professionals or Creditors' Committee members for allowance of compensation and reimbursement of expenses pending on the Effective Date or timely Filed after the Effective Date as provided in the Plan, as approved by the Court.

###### L. Post-Confirmation U.S. Trustee Fees.

To the extent U.S. Trustee Fees are due and owing under 28 U.S.C. § 1930 with respect to periods following the Confirmation Date, but prior to the entry of a final decree closing the Case, Reorganized Mahalo shall be obligated to satisfy such fees; provided, however, that if Reorganized Mahalo requests the entry of a final decree closing the case and the Liquidating Trustee opposes the entry thereof or requests (formally or informally) a delay in the entry thereof, the Liquidating Trust shall be obligated for all U.S. Trustee Fees relating to any period of time following the date on which Reorganized Mahalo made its request for entry of a final decree.

**VI.**

**EFFECT OF CONFIRMATION OF THE PLAN**

###### A. Binding Effect of Plan/Injunction.

**UPON THE EFFECTIVE DATE, BANKRUPTCY CODE SECTION 1141 SHALL BECOME APPLICABLE WITH RESPECT TO THE PLAN AND THE PLAN SHALL BE BINDING ON ALL PARTIES TO THE FULLEST EXTENT PERMITTED BY BANKRUPTCY CODE SECTION 1141(a). IN ACCORDANCE WITH BANKRUPTCY CODE SECTION 1141, AND SUBJECT TO THE TERMS OF THIS PLAN, INCLUDING THE LIENS GRANTED PURSUANT TO THE WELLS FARGO FOOTHILL RESTATED CREDIT AGREEMENT, THE RESTATED ABLECO CREDIT AGREEMENT AND THE EXIT FINANCING AGREEMENT, THE PROPERTY DEALT WITH BY THE PLAN SHALL BE VESTED IN THE REORGANIZED DEBTOR (AND TO THE EXTENT APPLICABLE, VESTED IN THE LIQUIDATING TRUST) FREE AND CLEAR OF ALL CLAIMS AND INTERESTS OF CREDITORS AND EQUITY SECURITY HOLDERS.**

**UPON THE EFFECTIVE DATE, ALL PERSONS AND ENTITIES SHALL BE PERMANENTLY ENJOINED BY THE PLAN FROM COMMENCING OR CONTINUING ANY ACTION, EMPLOYING ANY PROCESS, ASSERTING OR UNDERTAKING AN ACT TO COLLECT, RECOVER, OR OFFSET, DIRECTLY OR INDIRECTLY, ANY CLAIMS, RIGHTS, CAUSES OF ACTION, LIABILITIES OR INTERESTS IN OR AGAINST ANY PROPERTY VESTED IN THE REORGANIZED DEBTOR (OR THE LIQUIDATING TRUST) OR DISTRIBUTED OR TO BE DISTRIBUTED UNDER THE PLAN, BASED UPON ANY ACT, OMISSION, TRANSACTION, OR OTHER ACTIVITY THAT OCCURRED BEFORE THE CONFIRMATION DATE, EXCEPT TO THE EXTENT A PERSON OR ENTITY HOLDS AN ALLOWED CLAIM UNDER THE PLAN, IS ENTITLED TO A DISTRIBUTION UNDER THE PLAN IN ACCORDANCE WITH ITS TERMS, AND SEEKS TO ENFORCE ITS RIGHTS TO PAYMENT UNDER THE PLAN.**

**UPON THE EFFECTIVE DATE, EXCEPT TO THE EXTENT EXPRESSLY**

PRESERVED UNDER THE PLAN, INCLUDING THE LIENS GRANTED PURSUANT TO THE WELLS FARGO FOOTHILL RESTATED CREDIT AGREEMENT, THE RESTATED ABLECO CREDIT AGREEMENT AND THE EXIT FINANCING AGREEMENT, AND THEREAFTER TO THE EXTENT THE BANKRUPTCY COURT DETERMINES THAT A LIEN IS NOT AN ALLOWED SECURED CLAIM OR ALLOWED TRUST CLAIM, ANY LIEN OR OTHER INTEREST IN OR AGAINST PROPERTY OF THE DEBTOR, THE ESTATE AND/OR REORGANIZED MAHALO SHALL BE VOID AND OF NO FORCE AND EFFECT, IRRESPECTIVE OF WHETHER SUCH LIEN OR OTHER INTEREST REMAINS AS A MATTER OF RECORD WITH RESPECT TO THE TITLE TO SUCH PROPERTY. NOTWITHSTANDING THE FOREGOING, UPON AND AFTER THE EFFECTIVE DATE AND THEREAFTER TO THE EXTENT THE BANKRUPTCY COURT DETERMINES THAT A LIEN IS NOT AN ALLOWED SECURED CLAIM OR ALLOWED TRUST CLAIM, ALL STATE, COUNTY, OR OTHER GOVERNMENT OFFICIALS WITH THE RESPONSIBILITY OF MAINTAINING OFFICIAL RECORDS WITH RESPECT TO THE OWNERSHIP OF SUCH PROPERTY AND/OR LIENS AGAINST SUCH PROPERTY SHALL, UPON THE REQUEST OF REORGANIZED MAHALO, IMMEDIATELY REMOVE FROM THE TITLE TO SUCH PROPERTY ALL LIENS VOIDED UNDER OR AS A RESULT OF THE OPERATION OF THE PLAN, WITHOUT REQUIRING THE EXECUTION OF ANY INSTRUMENT, THE ISSUANCE OF ANY COURT ORDER OR ANY OTHER ACTION OTHERWISE REQUIRED BY APPLICABLE LAW TO EFFECTUATE SUCH REMOVAL.

**B.** **Compromise of Claims By The Debtor and the Estate.**

The Debtor's request for entry of the Confirmation Order shall constitute a motion to compromise claims as to the Compromise Parties and the Related Compromise Parties under Bankruptcy Rule 9019. Pursuant to such compromise:

AS OF THE EFFECTIVE DATE, FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, THE DEBTOR (ON BEHALF OF ITSELF AND THE ESTATE) COMPROMISES, RELEASES AND FOREVER WAIVES ALL RIGHTS OF ACTION AGAINST THE COMPROMISE PARTIES AND EACH OF THE RELATED COMPROMISE PARTIES, AND THE DEBTOR SHALL CONCLUSIVELY BE DEEMED THE HOLDER OF ALL SUCH CLAIMS AND RIGHTS AS SOLE REPRESENTATIVE OF THE ESTATE; <u>PROVIDED, HOWEVER</u>, THAT THE FOREGOING AND ANY OTHER RELEASE UNDER THE PLAN SHALL NOT EFFECTUATE A RELEASE OF ANY CONTINUING OBLIGATION OF A COMPROMISE PARTY OR ANY RELATED COMPROMISE PARTY UNDER THE PLAN OR UNDER ANY CONFIDENTIALITY AGREEMENT WITH THE DEBTOR. THE RELEASES SET FORTH IN THIS PARAGRAPH AND OTHERWISE UNDER THE PLAN SHALL BE BINDING UPON AND SHALL INURE TO THE BENEFIT OF THE DEBTOR, REORGANIZED DEBTOR, THE LIQUIDATING TRUSTEE, AND ANY CHAPTER 7 TRUSTEE, IN THE EVENT THE CASE IS SUBSEQUENTLY CONVERTED TO CHAPTER 7. TO THE EXTENT WILLIAMS AND ANY HOLDER OF A COMPROMISED O&G MECHANICS/MATERIALMEN CLAIM IS A COMPROMISE PARTY UNDER THE PLAN, THE PLAN SHALL NOT RELEASE ANY CONTINUING OBLIGATION OF SUCH ENTITY WITH RESPECT TO ANY PERFORMANCE RENDERED AFTER THE PETITION DATE; AND <u>PROVIDED FURTHER</u>, THAT NEITHER THIS SECTION NOR ANY OTHER PROVISION OF THE PLAN IS INTENDED, NOR SHOULD IT BE CONSTRUED, TO ALTER, MODIFY, OR PREJUDICE

THE RIGHTS OF THE SECURED LENDERS AGAINST THE PARENT OR ITS ASSETS, ALL OF WHICH RIGHTS ARE EXPRESSLY PRESERVED.

**C.**     **Exculpation and Limitation of Liability.**

NEITHER THE DEBTOR, THE REORGANIZED DEBTOR, THE SECURED LENDERS NOR THEIR RESPECTIVE ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, RESTRUCTURING CONSULTANTS, OTHER CONSULTANTS, FINANCIAL ADVISORS, NOR ANY OF THEIR RESPECTIVE OFFICERS, DIRECTORS, REPRESENTATIVES, AGENTS, EMPLOYEES, OR ANY OTHER PERSON ACTING OR PURPORTING TO ACT ON THEIR BEHALF, WHETHER IN THE PAST OR CURRENTLY, SHALL HAVE OR INCUR ANY LIABILITY TO ANY PERSON OR ENTITY FOR ANY ACT TAKEN OR OMITTED TO BE TAKEN IN CONNECTION WITH, OR RELATED TO THE FORMULATION, NEGOTIATION, PREPARATION, DISSEMINATION, IMPLEMENTATION, ADMINISTRATION, CONFIRMATION OR CONSUMMATION OF THE PLAN, OR ANY OTHER CONTRACT, INSTRUMENT, RELEASE OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE PLAN OR ANY OTHER ACT TAKEN OR OMITTED TO BE TAKEN IN CONNECTION WITH OR IN CONTEMPLATION OF THE RESTRUCTURING OF THE DEBTOR, <u>PROVIDED</u>, <u>HOWEVER</u>, THAT THE FOREGOING PROVISIONS OF THIS SECTION VI.C SHALL HAVE NO EFFECT ON THE LIABILITY OF ANY PERSON OR ENTITY THAT RESULTS FROM ANY SUCH ACT OR OMISSION THAT IS DETERMINED IN A FINAL ORDER TO HAVE CONSTITUTED GROSS NEGLIGENCE OR WILLFUL MISCONDUCT.

**D.**     **Injunctive Relief Relating To Claims and Releases.**

THE CONFIRMATION ORDER WILL PERMANENTLY ENJOIN THE COMMENCEMENT OR PROSECUTION BY ANY ENTITY, WHETHER DIRECTLY, DERIVATIVELY OR OTHERWISE OF ANY CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, RIGHTS, CAUSES OF ACTION OR LIABILITIES RELEASED OR EXCULPATED PURSUANT TO THIS PLAN, INCLUDING CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, RIGHTS, CAUSES OF ACTION OR LIABILITIES RELEASED UNDER THE PLAN.


**VII.**

**OTHER PLAN PROVISIONS**

**A.**     **The Effective Date.**

The Plan will not become binding or effective until and unless the Effective Date occurs. The Effective Date will be the first Business Day, as determined by the Debtor, in its reasonable discretion, on which the following conditions have been satisfied:

(1)     At least fourteen (14) days have elapsed following the Confirmation Date;

(2)     The Confirmation Order, in form and substance reasonably satisfactory to Ableco, Wells Fargo Foothill and the Exit Financing Lenders, has been entered and is not stayed;

(3)     All agreements and other documents reasonably necessary to implement the Plan have been executed and delivered in a form acceptable to Ableco; provided that (i) with respect to the Wells Fargo Foothill Restated Credit Documents and the Intercreditor Agreement, the form of such documents also must be acceptable to Wells Fargo Foothill; and (ii) with respect to the Exit Financing Documents and the Intercreditor Agreement, the form of such documents also must be acceptable to the Exit Financing Lenders.

(4)     Any modifications to the Plan are in a form acceptable to Ableco; provided that with respect to a provision regarding the treatment of the Claims of Wells Fargo Foothill under the Plan, and any other provision of the Plan that will adversely affect Wells Fargo Foothill or the treatment of the Claims of Wells Fargo Foothill in any material respect, such form also must be acceptable to Wells Fargo Foothill.

Ableco shall have the right to waive any of the foregoing conditions, with the exception of subparagraph (2); provided that with respect to subparagraph (3) and (4), Wells Fargo Foothill and the Exit Financing Lenders shall have the right to waive their respective rights thereunder, to the extent of such rights.

### B.     Stay of Confirmation Order Shortened.

The stay otherwise applicable to the Confirmation Order under Federal Rule of Bankruptcy Procedure 3020(e) shall be shortened to five (5) days following entry of the Confirmation Order.

### C.     Revocation of Plan/No Admissions.

Notwithstanding anything to the contrary in the Plan, if the Plan is not confirmed or the Effective Date does not occur, the Plan will be null and void, and nothing contained in the Plan or the Disclosure Statement will: (a) be deemed to be an admission by the Debtor with respect to any matter set forth in the Plan, including liability on any Claim or the propriety of any Claim's classification; (b) constitute a waiver, acknowledgment, or release of any Claims against, or any Interests in, the Debtor, or of any claims of the Debtor; or (c) prejudice in any manner the rights of any party in any further proceedings.

### D.     Exemption from Certain Transfer Taxes.

In accordance with Bankruptcy Code section 1146(a), neither (i) the issuance, transfer or exchange of a security, nor (ii) the delivery of an instrument or transfer under the Plan o shall be taxed under any law imposing a stamp or similar tax.  The Confirmation Order shall direct all governmental officials and agents to forego the assessment and collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without payment of such tax or other governmental assessment.

### E.     Modifications of Plan.

Subject to the restrictions set forth in Bankruptcy Code section 1127, the Debtor and Reorganized Debtor reserve the right, to alter, amend, or modify the Plan before its substantial consummation (and such amendment or modification shall be deemed to be granted absent objection within two (2) Business Days following written notice of any such proposed change), provided that any such alteration, amendment or modification is in a form acceptable to Ableco; provided further, that with respect to a provision regarding the treatment of the Claims of Wells Fargo Foothill under the Plan, and any other provision of the Plan that

will adversely affect Wells Fargo Foothill or the treatment of the Claims of Wells Fargo Foothill in any material respect, such form also must be acceptable to Wells Fargo Foothill.

### F.    Cram-Down.

The Debtor reserves the right to request that the Bankruptcy Court confirm the Plan in accordance with Bankruptcy Code section 1129(b) if one or more Impaired Classes votes to reject the Plan (provided the other requirements of Bankruptcy Code section 1129 are satisfied).

### G.    Post-Effective Date Effect of Evidences of Claims or Interests.

Commencing on the Effective Date, notes, certificates, warrants, and other evidences of Claims against or Interests in the Debtor constitute only the right to receive the distributions, if any, to the extent set forth under the Plan.

### H.    Post-Effective Date Notices.

Following the Effective Date, other than Reorganized Mahalo, the Liquidating Trustee, Wells Fargo Foothill, Ableco, and the United States Trustee, who shall receive notices of all pleadings Filed in the Case without any further action, all parties in interest who wish to receive, or continue to receive, notices of all pleadings Filed in the Case must File a new request for special notice and serve it on Reorganized Mahalo, the Liquidating Trustee, Wells Fargo Foothill, Ableco and the United States Trustee and their respective counsel. Reorganized Mahalo shall maintain and keep current the post-Effective Date special notice list, and make it available to all parties in interest upon written request. All pleadings, notices and other papers Filed in the Case following the Effective Date (other than the notice of Effective Date) must be served on the parties on the post-Effective Date special notice list.

### I.    Successors and Assigns.

The rights, benefits, and obligations of any entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such entity, whether or not such entity's Claim is Impaired under this Plan and whether or not such entity has accepted this Plan.

### J.    Saturday, Sunday or Legal Holiday.

If any payment or act under the Plan is required to be made or performed on a day that is not a Business Day, then the payment or act may be completed on the next day that is a Business Day, in which event the payment or act will be deemed to have been completed on the required day.

### K.    Headings.

The headings used in the Plan are inserted for convenience only and do not constitute a portion of this Plan or in any manner affect the provisions of this Plan or their meaning.

### L.    Severability of Plan Provisions.

If before confirmation the Bankruptcy Court holds that any Plan term or provision is invalid, void, or unenforceable, the Bankruptcy Court may alter or interpret that term or provision so that it is valid and enforceable to the maximum extent possible consistent with the original purpose of that term or provision.

That term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the Plan's remaining terms and provisions will remain in full force and effect and will in no way be affected, impaired, or invalidated. The Confirmation Order will constitute a judicial determination providing that each Plan term and provision, as it may have been altered or interpreted in accordance with this Section, is valid, enforceable, and, as of the Effective Date, binding under its terms.

### M. Governing Law.

Unless a rule of law or procedure is supplied by (a) federal law (including the Bankruptcy Code and Bankruptcy Rules), or (b) an express choice of law provision in any agreement, contract, instrument, or document provided for, or executed in connection with, the Plan, the rights and obligations arising under the Plan and any agreements, contracts, documents, and instruments executed in connection with the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York without giving effect to the principles of conflict of laws thereof.

### N. Retention of Jurisdiction.

Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Case after the Effective Date to the fullest extent provided by law, including the jurisdiction to:

1. Allow, disallow, determine, liquidate, classify, establish the priority or secured or unsecured status of, estimate, or limit any Claim;

2. Grant or deny any and all applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

3. Ensure that distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

4. Resolve any and all applications, motions, adversary proceedings, and other matters involving the Estate that may be pending on the Effective Date or that may be instituted thereafter in accordance with the terms of the Plan, provided that the Liquidating Trustee and the Liquidating Trust shall reserve the right to prosecute Causes of Action in any proper jurisdiction;

5. Enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents entered into in connection with the Plan;

6. Resolve any and all controversies, suits, or issues that may arise in connection with the consummation, interpretation, or enforcement of the Plan or any entity's rights or obligations in connection with the Plan;

7. Modify the Plan before or after the Effective Date pursuant to Bankruptcy Code section 1127, or modify the Disclosure Statement or any contract, instrument, release, or other agreement or document created in connection with the Plan or Disclosure Statement; or remedy any defect or omission or reconcile any inconsistency in any order of the Bankruptcy Court, the Plan, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created in connection with the Plan or

Disclosure Statement, in such manner as may be necessary or appropriate to consummate the Plan, to the extent authorized by the Bankruptcy Code;

8.      Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation or enforcement of the Plan;

9.      Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

10.     Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan or the Disclosure Statement; and

11.     Enter an order closing the Case.

If the Bankruptcy Court abstains from exercising jurisdiction or is otherwise without jurisdiction over any matter, this Section shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

Notwithstanding any other provision in this Section VII.N, jurisdiction and venue with respect to any dispute arising under the Wells Fargo Foothill Restated Credit Documents, the Restated Ableco Credit Documents, or the Exit Financing Documents shall in each case be determined respectively by the terms of such documents (including any forum selection clause therein) and applicable non-bankruptcy law; the Bankruptcy Court shall not retain jurisdiction over any such dispute.

**O.     Plan Embodies Settlement.**

As described in the Disclosure Statement, this Plan constitutes a good faith compromise and settlement of certain claims and interests between and among the parties subject thereto and binding on all other parties in interest in accordance with Bankruptcy Code section 1123(b).

**P.     Term of Bankruptcy Injunctions or Stays.**

All injunctions or stays provided for in the Case under Bankruptcy Code sections 105 or 362, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

**Q.     Objections to Confirmation.**

Objections to confirmation of this Plan are governed by Bankruptcy Rule 9014.  UNLESS AN OBJECTION TO CONFIRMATION IS TIMELY SERVED AND FILED IT WILL NOT BE CONSIDERED BY THE COURT.

**R.     Notices.**

Any notice required or permitted to be provided under the Plan or in connection with the Plan, shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery or (c) overnight delivery service, freight prepaid, and addressed as follows:

For the Debtor:

Kline, Kline, Elliott & Bryant, P.C.
Attn: G. David Bryant and Stephen W. Elliott
720 NE 63rd Street
Oklahoma City, OK 73105

For the Creditors' Committee:

Baker & McKenzie
Attn: Ali M. Mojdehi
12544 High Bluff Drive, Suite 300
San Diego, CA 92130

Baker & McKenzie
Attn: David W. Parham and Laurie D. Babich
2001 Ross Avenue, Suite 2300
Dallas, TX 75201

For Ableco:

Klee, Tuchin, Bogdanoff & Stern LLP
Attn: Lee R. Bogdanoff, Esq. and Martin R. Barash, Esq.
1999 Avenue of the Stars, 39th Floor
Los Angeles, CA 90067-5061

For Wells Fargo Foothill:

Schulte, Roth & Zabel LLP
Attn: Lawrence V. Gelber, Esq. and James T. Bentley, Esq.
919 Third Avenue
New York, New York 10022

For the United States Trustee:

Office of the U. S. Trustee
Attn: Katherine Vance, Esq.
224 S. Boulder, Suite 225
Tulsa, OK 74103

# VIII.

## RECOMMENDATION AND CONCLUSION

      The Debtor respectfully submits the foregoing Plan and urge persons and entities that hold Impaired Claims to vote to accept the Plan by checking the box marked "Accept" on their Ballots and then timely returning the Ballots to the Ballot Tabulator by the Ballot Deadline, as directed in the Plan and Disclosure Statement.

Dated: December 4, 2009

**MAHALO ENERGY (USA) INC.**

/s/ David Burton

By:    David Burton

Its:    President and CEO